No. 2198.

M. LISKOSSKI *v.* THE STATE.

1. MURDER—MANSLAUGHTER—EVIDENCE—CHARGE OF THE COURT.—It is an established rule of practice in this State that the charge of the court must make a pertinent application of the law arising out of the evidence, no matter how weak and impotent the evidence may appear to the court.  See the opinion *in extenso* for evidence in a murder case which, under this rule, demanded of the trial court a charge upon the law of manslaughter.

2. SAME—CASE STATED.—There being evidence in this case tending to show an original conflict between the deceased on the one hand, and the accused and one K., acting together, on the other, and that that conflict was abandoned, and that it was renewed between K., acting alone, and the deceased, in which second conflict the fatal injury was inflicted, the trial court, having correctly instructed the jury upon a conflict in which K. and the accused acted together, should have further charged upon the alternative theory of a homicide in which K. acted alone.

APPEAL from the District Court of Wilson.   Tried below before the Hon. George McCormick.

The indictment in this case charged the appellant with the murder of one Frank Mandrella, in Wilson county, Texas, on the twentieth day of June, 1886.   The conviction was for murder in the second degree, and the penalty assessed was a term

of ten years in the penitentiary. The opinion contains a full synopsis of the evidence.

*W. K. Dial* and *N. S. Lawhon*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Hurt, Judge. This is an appeal from a verdict and judgment of conviction for the offense of murder of the second degree, found and rendered against appellant at the December term, 1886, of the Wilson county district court.

It is assigned as error, 1, that the whole law of the case was not given in charge to the jury, and, 2, that the court failed to instruct the jury as to the law of manslaughter. It is contended that there was sufficient evidence upon which to base the theory of manslaughter, and that, therefore, the court should have instructed upon this view. It, therefore, becomes necessary to examine the evidence as presented in the statement of facts—a statement which, it may be said, presents some remarkable features:

It was in evidence that Mandrella, the deceased, had been, up to a short time before the homicide, in the employ of appellant as a laborer, but that the employment had terminated; that on the day of the homicide appellant, deceased and one Kruse, who appears to have been living with appellant, were at the neighborhood store of one Theodore Felix, a few miles distant from appellant's home; that while there deceased purchased of Felix two bottles of whisky, appellant and Kruse remaining at the former's wagon while deceased went for the whisky, and that the three then started in the direction of appellant's home, the three seemingly sober and friendly. This was shortly after midday of June 20, 1886. About three o'clock p. m. the wife of appellant went over to the house of a neighbor, one Ploch, living a few hundred yards distant, with the report that deceased had come to their house drunk, and had fallen over dead, and desiring to have a coffin made for his interment. About half an hour afterwards, Mrs. Ploch went over to appellant's house, and there found Mandrella lying dead on the gallery, his body covered with a wagon sheet, and the face discolored as through bruised. Save at one place there was no blood on the gallery, nor was the clothing of deceased bloody, nor was there on the gallery or clothing any sign of recent wetting. Defendant at this time

appeared to be drunk, and was walking about cursing Mandrella for dying on his premises. On the night of the said twentieth of June, Kruse and one Piedola went to the house of A. McClung, a justice of the peace, and the former, through the latter's interpretation, stated that Mandrella had died as before stated, and asked that an inquest be held; and the justice informed him that if he had died as stated there was no necessity for an inquest. The addition of the fact that appellant had stated to Felix, who came on the morning of the twenty-first to see to the burial of deceased, that they had buried his body in a grave five feet deep, enclosed in a coffin they had made, summarizes the undisputed facts, and brings the evidence down to the point of divergence and conflict.

The officer holding the inquest on the day following the homicide testified that "at the back side in the north corner of the field, on the bank of the Cibolo creek, we came to the place where the body was buried. We dug it up. The body was in a hole about two feet deep and just wide enough to crowd the body into. The body was buried without a coffin or a board or plank of any kind about it. The grave was perfectly level with the ground. There was nothing to indicate that a human body was buried there, except that the dirt immediately over the body appeared to have been recently dug or loosened up." It was further in evidence that the face, head and neck were black under the skin from bruises; and that the surgical examination developed that the vertebral column was broken at or about the point of junction with the head.

The wife of appellant testified on the trial as to the facts of deceased, her husband, and Kruse coming home together; that they drank together, deceased being drunk and the other two sober; that they sat down together to dinner, when deceased went into the kitchen and picked up a butcher knife; that she told him to put it down; that he "made no reply, but walked out with the knife into the yard and laid down on a bed, with the knife stuck down about him somewhere. I went into the house where my husband was, and told him that Mandrella had taken the knife out of the kitchen. He (appellant) got up and picked up his gun and went out to where Mandrella was lying down on the bed, and told him to give up that knife or he would kill him. Mandrella raised up and threw the knife away, and he and my husband then got into a scuffle, and both of them had hold of the gun. Kruse came out and stopped them, ard

my husband carried the gun back into the house. * * * In a little while Mandrella came into the room where Kruse was sitting and reading, and called him 'a s—n of a b—h,' and Kruse got up and threw him down on the floor, and Mandrella got up and was staggering around the room, and Kruse caught him again and threw him to the floor, and got on him and caught him by the head, and knocked his head against the floor and twisted his head around twice and let him alone. I then went over to Mr. Antonio Ploch's. * * * I told Mrs. Ploch that Mandrella had fallen down on the floor dead, or was dying," etc.

Upon cross examination, and for the purpose of contradicting the witness, the following was elicited : "I testified before the jury of inquest and did not tell the jury of inquest that Kruse threw Mandrella to the floor and twisted his head: I told the jury of inquest that Mandrella came to my house drunk, and fell dead. I did testify * * that I did not see my husband, Kruse, or Mandrella, drink any whisky. I also stated * * that I was in the kitchen when Mandrella fell dead; also * * * that my husband was drinking, but knew what he was doing * * * I did testify * * that in the morning, before they left home, I saw my husband pay Mandrella one dollar and fifty cents due him. My husband was not owing Mandrella anything ; he had paid him for his work the sum of five dollars and seventy-five cents when he quit work. * * * I was in the kitchen when Kruse threw Mandrella to the floor and twisted his head. There is one room between (the) gallery and kitchen, but I could see the front gallery. * * * My husband and Kruse put the body on a sled the next morning and carried it off. I also testified before the jury of inquest that my husband and Kruse were in two steps of Mandrella when he fell dead. * * It was about four o'clock when Mandrella fell dead." The State then put in evidence such portions of Mrs. Liskosski's testimony as she had been questioned about, the testimony being about as indicated by the questions and answers propounded and elicited as a predicate for impeachment.

The testimony of appellant's wife, it is to be observed, is the only evidence in the record purporting to be given by a witness of the transaction. Kruse was also present, but he has not spoken; and it is to be inferred that he is either dead, has left the country, or has been rendered incompetent as a witness by indictment for the same offense. That the palpable and material conflicts between Mrs. Liskosski's testimony on the trial

and that given by her upon the inquest cast grave suspicion upon her entire credibility, is not to be denied.  Yet, granting to this its proper legal force in reaching a conclusion upon the general question of guilt or innocence, does not her testimony, in some of its parts, present the theory that the killing, if there was a killing, was upon sudden quarrel and without malice? We conclude that it does; and in so concluding, it is not said that the appellant is *not* guilty, if guilty at all, of a *higher grade* of offense than *manslaughter*, or that he *is* guilty of *that* offense; nor was it necessary that either deduction should have been drawn by the trial judge below, nor is it now by us here.  Any theory legitimately arising out of the evidence in a case imposes upon the court the duty of submission, by appropriately instructing upon the law governing it; and this without regard to the strength or weakness of the facts supporting.  Uniform with the previous rulings of this court is the doctrine here declared, viz., the charge of the court must make a pertinent application of the law covering every theory arising out of the evidence; that the duty is not dependent upon the court's judgment of the strength or weakness of the testimony supporting the theory, it being the prerogative of the jury to pass upon the probative force of the testimony.  The court should have given an instruction upon the law of manslaughter, and its failure to do so was error.

The testimony presents still another theory of the case, viz: That the contest between appellant and deceased had terminated (the struggle over the butcher knife and gun); and that a new and independent difficulty had arisen between Kruse and deceased, in the course of which Kruse twice bore deceased to the floor, pounding the floor with his head, and twisting his neck from side to side.  The learned trial judge, having already properly instructed the jury upon a homicide based upon the theory that Kruse and appellant acted together in its commission, should have also instructed upon the alternative theory arising out of this last mentioned evidence, viz : a homicide in which Kruse acted alone.  The omission to do this was also error ; and though neither this nor the error before discussed was excepted to at the time, they were such as require reversal, as being calculated to prejudice the rights of appellant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*