E. W. PARSONS V. CITY OF FORT WORTH ET AL.

Decided May 25, 1901.

**1.—Municipal Corporation—Notice to City of Claim for Damages.**

Where a city charter provided that before the city should be liable for any damages notice of claim therefor should be given to the city secretary or mayor in writing within thirty days after the injury, the averment and proof of such notice was a condition precedent to any recovery against the city for damages. resulting from the failure of the city's servants to properly burn or inter refuse matter deposited by them at the city dumping ground near plaintiff's premises,. and such notice can not be dispensed with because plaintiff's petition charged the negligence complained of as being that of the city's servants and officers, it not being made to appear that the mayor or secretary, or any member of the city council, was a party to such acts of negligence. City of Houston v. Isaacs,. 68 Texas, 111, distinguished.

**2.—Same—Negligence—Joint Liability of Citizen—Nuisance.**

Where a city assumes the duty of disposing of its refuse matter by burning or interment, a railway company having a depot therein, which delivers the bodies of dead animals to the city servants to be so disposed of, can not,. because of such delivery and the knowledge on its part that the city's servants disregarded their duty as to making a proper disposition of such bodies, be held liable for damages resulting from their failure to properly inter or dispose of such bodies at the city dumping ground.

Appeal from Tarrant. Tried below before Hon. W. D. Harris.

*Parker & Maben* and *Theodore Mack,* for appellant.

*W. D. Williams,* for appellee City of Fort Worth.

*Stanley, Spoonts & Thompson,* for appellee Texas & Pacific Railway Company.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment of dismissal upon demurrer to the petition of appellant against the city of Fort Worth and the Texas & Pacific Railway Company, claiming damages in large amount on account of a nuisance maintained by said city, and in which said railway company participated.

It was alleged, in substance, that the city of Fort Worth had duly and legally set apart and established dumping grounds for the deposit and burial of all dead and offensive matter of said city about one-fourth of a mile south of plaintiff's premises upon which himself, wife, and six children lived; that it was provided by ordinance duly enacted that all such matter should be burned or interred upon said grounds by the agents and servants of said city in charge thereof, in such manner as that it would not be offensive; that during the period of the two years alleged the city, its agents, and servants, failed and neglected to obey the ordinance with reference to the interment of offensive matter, whereby the air and water in and about plaintiff's home became poisoned and caused the sickness and expense of which complaint is made. It was further alleged that the Texas & Pacific Railway Company had permitted some 300 dead cattle and horses theretofore shipped into the city and unloaded there, to be removed from its premises and carried to and deposited upon said dumping ground, where they were left uncovered or insufficiently buried. It was charged that in the reception of the carcasses from the railway company the city, its servants, and agents, acted for the company, receiving compensation therefor, and that all acts of the city, its agents and servants of which complaint was made became acts of the railway company. The prayer was for damages in the sum of $2000 against the city and railway company jointly, and for $10,000 against the city alone.

As presented in appellant's brief, the principal contention before us is that there was error in the court's conclusion and judgment that no cause of action is stated as against the city of Fort Worth, which at the times named in the petition was acting under a charter and with powers conferred by special act of the Legislature approved May 9, 1899.

We do not find it necessary to determine to what extent, if at all, effect shall be given section 76 of said special act which provides that the city in no event is to be held liable for injuries to persons or property occasioned in the enforcement or attempted enforcement of the ordinances for the preservation of the health of said city, for on the submission it was admitted before us, as also appears from the judgment be-

low, that appellant did not allege, and in fact had not given, the notice in writing required by the following section of the charter: "Before the city of Fort Worth shall be liable for any damages of any kind, the person claiming damages, or some one for such persons, shall give to the city secretary or mayor notice in writing of such injury within not to exceed thirty days after the same shall have been received, stating in such notice when and how the injury occurred, and the cause and extent thereof, and the city shall not be liable unless notice shall have been given within the time and in the manner herein provided." Page 91, sec 164, Special Laws of 1899.

If upon no other ground, we think the admitted fact, under the operation of the section of the charter quoted, is conclusive in favor of the court's action upon the demurrer presented by the city. City of Ft. Worth v. Shero, 16 Texas Civ. App., 487. While the section of the charter construed in that case is part of a different act of the Legislature, it is nevertheless identical with the one before us. It was there held that such statutes are mandatory, and that the averment and proof of such notice as the statute mentions is a condition precedent to recovery, and this is well sustained by other authority. Engstrom v. Minneapolis, 80 N. W. Rep., 962; Bansher v. St. Paul, 75 N. W. Rep., 745; Currier v. Concord, 44 Atl. Rep., 692. The power of the Legislature to provide such safeguards and limitations to the liabilities of municipalities to which grants of political and legislative power are made, must we think be conceded, as the question was necessarily involved in the Shero case, in which writ of error was refused by our Supreme Court. See also City of Sherman v. Langham, 42 S. W. Rep., 961; State v. Mayor of New Orleans, 109 U. S., 285; Luke v. El Paso, 60 S. W. Rep., 363.

It is insisted, however, that this case falls within an exception; the contention being that where the act of which complaint is made is done by the very officers of the city to whom notice is to be given, the notice required by the statute is not necessary; and the case of the City of Houston v. Isaacs, 68 Texas, 111, is cited in support of the proposition. The petition avers that the dumping grounds had been duly and legally set apart and established, and that the city duly and legally took possession and control thereof; that by ordinance duly enacted all such dead and effete matter of which complaint is made should be burned or interred upon said grounds by the agents and servants in charge thereof; that all such matter as had been deposited thereon since the establishment of said grounds had been so deposited by the said city of Fort Worth, its agents, and servants, and under their supervision, discretion, instruction, and control, and they had had full management of same. No complaint is made of wrong or negligence on the part of the city in locating its dumping grounds at the place it did, or that insufficient regulations had been prescribed. Nor is complaint made of the fact that offensive matter was deposited on said grounds for burial; the complaint is that such matter was not properly interred in accordance with the regulations. The city, considered as an entity, ex necessitate rei,

performs its functions through instrumentalities. The management and control of the city dumping grounds must, therefore, as is in effect alleged, have been that of the servants and agents of the city. It is not alleged that the city secretary or mayor was guilty of any of the. wrongs charged, or that the duties involved in the due burial of dead matter devolved upon them or upon the city council or any of its members. The city, through its council, appears to have designated a proper place and to have prescribed suitable regulations, and the negligence, therefore, of which appellant complains must be construed to have been that of the servants and officers of the city, other than the city secretary or mayor, such as are usually designated and employed to perform the duties involved. This case, therefore, is distinguishable from that of the City of Houston v. Isaacs, supra.

. What has been said we think in part applicable to the case presented against the appellee; the Texas & Pacific Railway Company. It may be conceded that no right in the railway company exists to ·gather from territory outside the city large numbers of dead carcasses and bring and deposit them within the· city. But we think the petition should receive a reasonable construction, not one leading to absurdities. An examination of the special act of the Legislature mentioned discloses that the city is given "full power" to make and provide for the enforcement of regulations to prevent the introduction into the city of contagious or infectious diseases, and to make quarantine and all other laws and regulations for the promotion of health, and we will not assume that this has not been done, and that the pleader intended that the petition was to be construed as charging the railway company with a violation of any such regulation, and of having engaged in conduct senseless within itself and contrary to public good. The allegation that said dead animals were brought into the city seems rather in the nature of a mere introduction of the further fact of which complaint is made,—that they were improperly interred. Appellant is not a resident of the city; no injurious consequences are alleged to have resulted by reason of the shipment of the dead animals into the city, and his cause of action is predicated upon no such ground. The gravamen of the charge is that the railway company, by failing to properly inter the dead animals described,·or in acting together with or inducing the action of the servants of the city, became responsible for the consequent injuries. Giving the· petition, therefore, a reasonable construction, we must assume that during the period named in the petition, and in the ordinary course of its business as a carrier of cattle and horses, some three hundred of such animals died in shipment, and were thus brought to and deposited in its shipping pens within the city of Fort Worth. If so, it became its legal duty, as alleged, to cause the removal and deposit thereof upon the city dumping grounds. No right of appellant was infringed in so doing, and no liability arose because the railway company obeyed the law in this particular. Railway v. Smith, 49 S. W. Rep., 627.

. The fact that in such removal and deposit the company may have

employed and compensated the servants of the city is immaterial. The acts of removal and deposit were lawful. The employment of those servants of the city whose duty it was to inter was not forbidden by law, and tends perhaps to indicate the exercise of the proper care on the part of the company, rather than otherwise. So that we come to the question whether the company became liable because of the negligence of the city employes in failing to bury or to sufficiently bury the dead carcasses mentioned. It is not specifically charged that the company undertook the burial of said carcasses through its own servants; on the contrary it is alleged that the city ordinance required the burial of such matter by the agents and servants of the city in charge of the dumping ground, and we will not aid the petition by assuming that the company did undertake the burial, although, in view of the control of the city alleged, this fact would probably be immaterial. The liability of the company, therefore, if any, must arise out of the fact alleged that, with its knowledge and permission, the city's servants disregarded the city regulations in reference to burial. The servants of the city, by the ordinance alleged, were invested with "full power and control." The duty was theirs alone. The company having neither power of control nor devolved duty, is without responsibility. These are reciprocal and interdependent relations. In the very nature of the subject it is proper, if not necessary, that incorporated cities shall assume control in the disposition of its refuse matter, and when this has been done as here alleged, it can not reasonably be insisted that the individual denizen is liable in damages for the negligence of the city's servants in burying or in improperly burying dead and offensive matter of any kind that the citizen by ordinance is required to deliver to such city servant for disposition. The consequences of a contrary doctrine would be far reaching and startling; no authority in support thereof has been cited, and we decline to assent thereto.

We conclude that the demurrers were properly sustained, and the judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.