The court in qualifying his bill on this subject said:

"After hearing the evidence, I concluded that the jury did not discuss the failure of the defendant to testify, but that defendant did not offer any evidence to contradict the witnesses, and that the court charged the jury not to consider the matter of the defendant not testifying, and, when the jury read this part of the charge, it was stated by the jury that the jury must not consider such failure of defendant to testify. As to the witness Fuller's reputation, the evidence taken on the motion for a new trial is referred to, and I concluded that the verdict of the jury was not affected by same."

Clearly the judge's conclusions were amply supported by the testimony of the jury. Their credibility was a matter that he not only had the right, but it was his duty, to pass upon. He did not have to believe the testimony of those who would have supported appellant's contention when others, and more of them, testified in effect to the reverse. This court, and no judge of it, can possibly be as well qualified to determine the real facts and who was telling the truth as the judge of the trial court. His conclusion on disputed facts ought to be, and is, conclusive on this court.

Appellant has several bills showing that he objected to certain questions asked different witnesses, claiming that such questions were leading. As a sample, this is one of them to said witness Fuller:

"Q. 'Will ask you whether or not at any time just shortly before you went and knocked on the door you heard a smothering noise up there?' (The door knocked upon was referred to as the one to the room in which the prosecutrix and defendant were at the time of the alleged commission of the offense.) To which the witness answered: 'Yes, sir; crying.'"

Clearly this question was not leading. It did not suggest the answer, and besides, even if it had, no prejudice is shown by asking the question under the circumstances of this case. 1 Branch's Ann. P. C. p. 90, Some of the bills on this subject were qualified by the judge; others were not. Taking the several bills, neither those that were qualified by the court nor those which were not show any such error as would authorize or justify a reversal of this case.

Appellant's bill complaining that the court refused to permit him to ask said girl a certain question as qualified by the judge shows no error.

This case without any doubt shows that appellant by force raped his own 16 year niece while she was peculiarly and specially under his care, custody, control, and influence. The reversal of this case will no doubt result in his going "scott free" of any conviction. There is no reversible error. He had a fair and impartial trial, and his conviction should stand. I dissent.

---

## CITY OF FT. WORTH v. ASHLEY.*
(No. 8609.)

(Court of Civil Appeals of Texas. Ft. Worth. April 21, 1917. On Motion for Rehearing, May 19, 1917.)

1. EMINENT DOMAIN ☞277—OVERFLOW OF LAND—ACTION—NOTICE TO CITY—NECESSITY.

Where plaintiff's property was damaged by an overflow due to a change of grade by defendant city, the charter provision exempting the city from liability unless notice in writing was served upon the board of city commissioners was no defense to an action for damage in view of Const. art. 1, § 17, forbidding that any person's property be taken or damaged without adequate compensation.

2. APPEAL AND ERROR ☞232(3)—GROUNDS OF REVIEW — INSTRUCTIONS—REFUSAL—OBJECTION TO GENERAL CHARGE.

The assignment that the court erred in refusing a special instruction will not be considered, where the court's general charge of effect contrary was not objected to on the grounds urged in support of the assignment.

3. APPEAL AND ERROR ☞232(3)—GROUNDS OF REVIEW—SPECIFIC OBJECTIONS TO CHARGE—NECESSITY.

Assignment that the award of certain damages was unauthorized because the notice served upon defendant city did not specify such element will be overruled, where the court's charge submitting such element of damages was not objected to on any such ground.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by H. S. Ashley against the City of Ft. Worth. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

T. A. Altman and B. L. Agerton, both of Ft. Worth, for appellant. Capps, Cantey, Hanger & Short and D. B. Trammell, all of Ft. Worth, for appellee.

CONNER, C. J. This is a suit by appellee to recover damages of the appellant city occasioned by the acts of said city in changing the grades of certain streets and alleys in the vicinity of plaintiff's property, whereby the property was overflowed to the plaintiff's damage in the way of a depreciated value of the premises and because of inconvenience to and sickness of himself and family. Under a general charge, the jury returned a verdict in favor of the plaintiff for damages in the sum of $3,000, itemized by the jury as follows: Property damage, $1,500; discomfort and annoyance caused by defendant's negligence, $1,000; suffering of plaintiff's wife caused by defendant's negligence, $500.

[1] The provision of the charter of the city of Ft. Worth pleaded and proven by the defendant requiring notice in writing to be served upon the board of city commissioners of damages and injury of any kind to per-

sons or property is without doubt valid and enforceable. Parsons v. Ft. Worth, 63 S. W. 889; City of Ft. Worth v. Shero, 16 Tex. Civ. App. 487, 41 S. W. 704; English v. Ft. Worth, 152 S. W. 179; Luke v. El Paso, 60 S. W. 363. But it cannot be said that by reason thereof the court erred in refusing to give a peremptory instruction for the defendant, because, as appears from the evidence, a recovery for damages for the deteriorated value of plaintiff's premises was recoverable, not only because coming within the terms of the notice given, but also because, it seems, of the constitutional right to recover such damages regardless of the question of notice. Section 17, art. 1, Constitution of Texas; Shows v. Dallas, 172 S. W. 1137; Houston v. Kleinecke, 26 S. W. 250; Houston v. Isaacks, 68 Tex. 116, 3 S. W. 696; Dallas v. Young, 28 S. W. 1036; Dallas v. Cooper, 34 S. W. 321; Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467; Ft. Worth v. Howard, 3 Tex. Civ. App. 537, 22 S. W. 1059; Powell v. Houston & T. C. Ry. Co., 104 Tex. 219, 135 S. W. 1153, 46 L. R. A. (N. S.) 615.

[2] Nor do we feel justified in sustaining appellant's second assignment of error to the action of the court in refusing a special instruction requiring the jury in their assessment of damages to disregard "any sickness or deterioration of the health of the plaintiff's wife which occurred more than 30 days prior to December 2, 1913," the date of appellant's first notice; for the reason that the court's general charge of effect contrary to that of the special charge was not objected to on the grounds urged in support of the second assignment. See G. T. & W. Ry. Co. v. Dickey, 187 S. W. 184; Cleburne Street Ry. Co. v. Barnes, 168 S. W. 991; Railway Co. v. Wheat, 173 S. W. 974; Elser v. Putnam, 171 S. W. 1052; Van Zandt-Moore Iron Works v. Axtell, 58 Tex. Civ. App. 353, 126 S. W. 930.

[3] The contention urged under appellant's third assignment, to the effect that the award of damages for discomfort and annoyance in the use of the plaintiff's premises was unauthorized because the notice served upon the board of commissioners specified no such element, must be overruled, for the reason that the court's charge submitting this element of damages and complained of in the assignment was not objected to on any such ground. See Railway Co. v. Dickey and Railway Co. v. Barnes, above cited.

We have concluded, however, that appellant's fourth and last assignment, to the effect that the verdict of the jury is excessive, must be sustained. The plaintiff testified to the changes in grade alleged and to subsequent frequent overflows of his premises by rains which stood in accumulated quantities for short periods of time upon his lots; that upon two occasions, at least, such overflows brought dead animals upon his premises and at other times refuse of objectionable character, so that the evidence doubtless justified

the inference that his property was damaged. But in fixing the amount of the damage to his property he stated that the market value of such property "immediately before it began to overflow" was $3,500. The evidence suggests that the witness' estimate of value as indicated was made up of the cost to him, rather than from a knowledge of market conditions. He testified that he purchased the property originally for $1,800, and then described the improvements made by him, consisting of the addition of one room, improvement of the street in front of him, etc. But, as we view the testimony, the market value of the property was not satisfactorily shown, particularly after the changes in grades and after the overflows, which were principally in 1912 and 1913. His evidence on this subject was:

"I have sold that property out there. I believe I sold it on February 25, 1915. I sold it to a man named W. E. Cole. The deed is recorded as a sale for $2,500 cash. I believe the deed I made recited $2,500 cash. * * * I had $3,500 interest actually in this place; that is what it cost me. I got for the place a thousand dollars and a one-half interest in an automobile, not a new one, but an old one, a Hudson, one old Daddy Cole here at Ellison's had been driving around for a number of years. I expect the reasonable market value of that automobile, secondhand as it was, was $500 or $600."

As stated, we are not satisfied on the evidence as a whole to approve the jury's finding of $1,500 damage to the real estate. What effect, if any, the improved streets, adjacent park, etc., had in the way of enhancing the value of plaintiff's property, does not appear; nor, as already noted, does it appear what the market value of the premises was immediately after the injuries complained of. Nor does any consideration appear to have been given to the depression in values of real estate during the periods complained of. The mere fact that plaintiff, a year or so afterwards, sold the property for less than it cost him, cannot be accepted as a proper criterion.

We feel likewise dissatisfied, after a consideration of the evidence, which we will not undertake to set out, to approve the findings of $1,000 for discomfort and inconvenience, and $500 for the subsequent sickness of the plaintiff's wife. Assuming that both of these elements of damages have foundation in the evidence, yet the amount awarded for discomfort and inconvenience seems disproportionate to the value of the premises. There was evidence to the effect that the principal inconvenience and sickness of the plaintiff's wife occurred in 1912, prior to the date upon which the notice of plaintiff's damages was given to the city, yet at that time no specific claim in the notice of injuries or damage was made on the ground of inconvenience and discomfort; the specific claim for damages in the notice being confined to injuries to his property and to the health of his family. Nor is any proof pointed out of the value of the time lost by the plaintiff's wife during her

period of sickness in the early part of 1913, or of moneys, if any, paid for drugs or medical attendance on this account. So that, on the whole, as before stated, the verdict of the jury as to the amount of the damages awarded will not be approved; but the verdict and judgment will be set aside and the cause remanded for a new trial, rather than to undertake a correction by requiring a remittitur. See T. & P. Ry. Co. v. Rasmussen, 181 S. W. 212.

Reversed and remanded.

### On Motion for Rehearing.

Appellant's fourth assignment, which was sustained by our original opinion, attacks the verdict as excessive upon each element of the recovery, but the propositions following the assignment are limited to the element of discomfort and annoyance. Appellee, therefore, insistently urges that we erred in considering the evidence relating to elements other than the one attacked by the propositions.

It is true, as insisted, that ordinarily questions presented in an assignment, not followed by an appropriate proposition, are deemed to have been waived; but in the case before us we did not feel it to be our duty to follow this rule. The rule has no application to fundamental error, and, as pointed out in our original opinion, a very material part, as shown by the evidence, of both the elements of sickness and of discomfort and inconvenience occurred more than 30 days prior to December 2, 1913, the date of the appellee's first complaint to the city, and we are of the opinion that it was fundamentally wrong in the charge of the court to authorize a verdict covering such damages as so occurred more than 30 days prior to December 2, 1913, and fundamentally wrong to give judgment therefor. The provision of the special charter of the city of Ft. Worth, granted by special act of the Legislature of the state of Texas approved March 10, 1909 (Loc. & Sp. Acts 31st Leg. c. 31), having reference to the notice mentioned is section 4 of subchapter 11, and reads as follows: "The city of Ft. Worth shall not be held to" be liable "for and on account of any damages or injury of any kind whatsoever to persons or property, unless the person claiming same, his agent or attorney, shall within thirty days after such injury or damage has been sustained serve notice in writing upon the board of commissioners, giving the day and date, the time and place where such injury or damage occurred, and the nature and character of the injury." Section 6 of the same chapter provides that: "This act shall be taken and held to be a public law, and all courts and tribunals shall take judicial cognizance and knowledge of the contents and provisions thereof, and it shall not be necessary to plead or prove the same."

As will be seen by an examination of the authorities relating to that subject cited in our original opinion, a compliance with section 4 by giving notice of any "damages or injury of any kind whatsoever to persons or property" was a prerequisite to the establishment of liability of the city for any of the damages occurring more than 30 days prior to December 2, 1913. Indeed, Mr. Associate Justice BUCK, at least, is of the opinion on re-examination that we should have sustained appellant's second assignment of error, complaining of the action of the court in refusing to give the special instruction noticed in our original opinion disposing of that assignment; the error in the main charge being only one of omission, and the rule announced in Railway Co. v. Barnes, 168 S. W. 991, not being applicable. While the views above stated were not mentioned in our original opinion, in view of the fact that we had concluded to reverse the judgment, nevertheless they originally were entertained by us in an unexpressed form, and now present our convictions upon reconsideration. So that it can hardly be said that our reversal of the judgment comes within the meaning of Rev. St. art. 1631, requiring the suggestion of a remittitur in cases where it shall be the opinion of the Court of Civil Appeals that the verdict and judgment of the trial court is excessive, and for that reason only shall remand the cause. We therefore feel that we cannot give effect to the contention so vigorously presented on the motion for rehearing that this court should, as a condition for affirmance, indicate the amount of the excess in the verdict and judgment, even though the majority were in error, as it seems, in entertaining the view expressed in the Rasmussen case that article 1631 did not apply in every case in which the judgment was reversed because only of an excess in the verdict and judgment. Wilson v. Freeman, 185 S. W. 993.

We conclude that the motion for rehearing should be overruled.