## CAWTHORN v. CITY OF HOUSTON.
### (No. 233–3416.)

(Commission of Appeals of Texas, Section B. June 1, 1921.)

**1. Municipal corporations ⊂⇒742(4)—Requirement of 90 days' notice of injury to mayor and council must be alleged if applicable, unless waived, or the city estopped.**

Under Houston City Charter, art. 9, § 11, requiring a party injured in person or property to give the mayor and council written notice thereof within 90 days, notice is a condition precedent to right of action, so that plaintiffs, suing the city, must affirmatively allege the prescribed notice, if applicable to the facts pleaded, unless the city has waived the charter provisions or become estopped by its officers' actions from asserting it.

**2. Municipal corporations ⊂⇒741(1)—Charter requiring injured party to give 90 days' notice to mayor and council before beginning suit upheld.**

The provision of Houston City Charter, art. 9, § 11, requiring persons injured by the city to give the mayor and council notice within 90 days thereafter, will be upheld, and must be strictly complied with, and is only a prerequisite to the assertion in court of a claim of liability by the injured party.

**3. Municipal corporations ⊂⇒741(1)—Charter provision requiring notice within 90 days after injury applies to one injured while hauling sand for city.**

In a personal injury action against the city, where the negligence complained of resulted in the caving in of a sand bank upon the plaintiff while he was hauling sand for the city, Houston City Charter, art. 9, § 11, requiring giving of notice to mayor and council within 90 days after injury, is applicable.

**4. Municipal corporations ⊂⇒741(1)—Requirement of notice of injury applies to city employees.**

The provision of Houston City Charter, art. 9, § 11, before suing the city within 90 days after personal injury, that party shall have the mayor and city council notified of the injury, is in derogation of common law, and should be construed with reasonable strictness, and applies to city employees as well as others.

**5. Municipal corporations ⊂⇒733(1)—In hauling sand and adjusting damages for injuries to one therein engaged, the city acts in its proprietary capacity.**

In hauling sand with its teams and distributing it generally, the city of Houston was undoubtedly acting in its proprietary capacity, and in adjusting claims for damages arising therefrom it continues to act in that capacity, and the courts recognized the distinction between proprietary and governmental capacity.

**6. Municipal corporations ⊂⇒741(3)—Mayor and council may waive strict compliance with provision requiring notice of personal injury before bringing suit.**

The mayor and commissioners of the city of Houston are not prohibited from waiving the requirement of Charter, art. 9, § 11, that a party injured through the city's negligence must notify the mayor and city council within 90 days thereof as a prerequisite to bringing suit, and they should be permitted to do so, a waiver being the voluntary relinquishment of a known right.

**7. Municipal corporations ⊂⇒742(6)—Whether city commissioner waived strict compliance with charter provision for notice of personal injury held a jury question.**

In an action against the City of Houston for personal injuries, whether the acts of a commissioner, acting for the mayor and council, constituted a waiver of strict compliance with Houston Charter, art. 9, § 11, requiring notice to mayor and council of personal injury within 90 days as a prerequisite to a suit, is a question which plaintiff was entitled to have submitted to the jury.

**8. Municipal corporations ⊂⇒741(3)—A commissioner as agent for commissioners and mayor may waive strict compliance with charter provision.**

A city commissioner, being authorized by the mayor and commissioners to approach a claimant for personal injuries and offer him a compromise and invite him to their office to discuss it, may be deemed authorized to waive strict compliance with Houston City Charter, art. 9, § 11, requiring notice.

**9. Municipal corporations ⊂⇒741(3)—City held estopped by conduct of its officers from requiring strict compliance with charter provision.**

Whether or not the mayor and council intended to waive strict compliance with Houston City Charter, art. 9, § 11, requiring notice within 90 days after injury, where the mayor and commissioners, through their agent, one of the commissioners, so conducted themselves so as to lull claimant into a sense of security and cause him to think they were waiving such charter provision, the city is estopped to assert noncompliance therewith.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by J. H. Cawthorn against the City of Houston. From a judgment sustaining a general demurrer to plaintiff's petition, the plaintiff appealed to the Court of Civil Appeals, which affirmed the judgment .(212 S. W. 796), and the plaintiff brings error. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the former for trial in conformity with opinion.

Rowe & Kay, of Houston, for plaintiff in error.

W. J. Howard, of Houston, for defendant in error.

POWELL, J. This is an action in damages, instituted in the district court of Harris county, Tex., by J. H. Cawthorn against the city of Houston, in which the plaintiff sought judgment in the sum of $30,000 for alleged personal injuries sustained by him on or about June

13, 1916, as the result of defendant's negligence. The original petition is copied in full in the opinion of the Court of Civil Appeals, and no useful purpose would be subserved by recital of details here, especially as they have no important bearing upon the controlling questions on this appeal. Suffice it to say that Cawthorn was an employee of the city, driving a wagon which was engaged in hauling sand from a sand bank belonging to said city, and distributing such sand to various parts of the municipality as needed; that, while loading his wagon one day, the sand bank caved in on him, resulting in his serious injury. The petition was in the usual form of an action for damages for personal injuries resulting from negligence.

The defendant in error interposed the following demurrers to plaintiff's original petition, to wit:

"I. Now come the defendants, and with leave of court file this their first amended original answer, and as in their original answer demur to plaintiff's petition that the same shows no cause of action against them, and of this they pray judgment.

"II. For further demurrer those defendants would show that by the provisions of section 11, article IX, of the City Charter of the City of Houston, it is provided that as a condition precedent to liability notice of claim for damages shall be given the city as therein provided, and plaintiff's petition wholly fails to show any such notice was given."

Section 11 of article 9 of the charter of said city just referred to, and which is all important in this opinion, reads as follows:

"Sec. 11. Before the city of Houston shall be liable for damages for personal injuries of any kind, or for injuries to or destruction of property of any kind, the person injured, or the owner of the property injured or destroyed, or some one in his behalf, shall give the mayor and city council notice in writing of such injury or destruction, duly verified, within ninety days after the same has been sustained, stating in such written notice when, where, and how the injury or destruction occurred, and the apparent extent thereof, the amount of damages sustained, the amount for which claimant will settle, the actual residence of the claimant by street and number at the date the claim is presented, and the actual residence of such claimant for six months immediately preceding the occurrence of such injuries or destruction, and the names and addresses of the witnesses upon whom he relies to establish his claim, and a failure to so notify the mayor and city council within the time and manner specified herein shall exonerate, excuse, and exempt the city from any liability whatsoever. * * *"

The city, also, in its answer, specially pleaded the provisions of said section of the city charter, and alleged failure on the part of Cawthorn to comply therewith, and denied any liability to him in consequence of such failure.

By way of replication to said demurrers and plea of defendants in error Cawthorn pleaded as follows:

"I. That the provisions of the city charter of the city of Houston pleaded by the defendant in paragraph 11 of its said answer have no application to an injury such as sustained by the plaintiff, wherein the acts of the defendant were the direct and proximate cause of said injury as set forth by plaintiff in his original petition.

"II. That the provisions of the City Charter of the City of Houston pleaded by the defendant in paragraphs I, II and III of said answer were waived as a condition precedent or a prerequisite to the defendant's liability in this cause, because the defendant, acting by its authorized agents and one of its commissioners, Matt Drenan, shortly after the plaintiff had sustained the injuries complained of in his original petition, and within ninety days after said injuries were inflicted, knowing and being fully advised as to the cause, nature, and extent of the plaintiff's injuries, visited the plaintiff for the purpose of offering, and did offer, to the plaintiff a written instrument for the plaintiff to sign, which paper related to the injuries of plaintiff and compensation in money to plaintiff by reason thereof, with authority from the mayor and commissioners so to do, and also said commissioners invited plaintiff to appear before the commissioners while in session with a view of adjusting and settling for a consideration said injuries, and which the plaintiff attempted to do, but was unable to get said commissioners together at the time agreed upon although the said mayor and commissioners, at various and sundry times, agreed to take up the plaintiff's claim, and see what could be done for him, all of which was within 90 days from the infliction of said injuries, and then and thereby the defendant waived said notice, and became estopped from the operation thereof in its favor.

"III. Plaintiff, further pleading herein, says that defendants are estopped from now here pleading the said charter provision requiring the plaintiff to give the said ninety days' notice of his claim for injuries, as alleged by him:

"1st. By reason of the facts alleged in his petition.

"2d. By reason of the foregoing facts herein alleged.

"3d. This plaintiff here and now alleges that said defendant's officers, knowing of plaintiff's injury as alleged, and knowing his ignorance of said charter provision, through its officers, Matt Drenan, one of its commissioners, and other officers and agents of the defendant city of Houston, fraudulently put the plaintiff off from time to time, leading him to believe that they would compensate him for the injury sustained by him, until said ninety days had expired from the date of said injury, and by reason of which said facts the said defendant city of Houston, and its officers, defendants herein, are now here estopped from pleading said charter provision or now claiming any benefit or right thereunder."

Upon consideration of the pleadings above outlined, the city's general demurrer was sustained. Cawthorn failed to amend, and the court dismissed his suit. Plaintiff in

error prosecuted his appeal to the Court of Civil Appeals, which court affirmed the judgment of the trial court. See 212 S. W. 796.

Cawthorn, in due course, filed application in the Supreme Court for writ of error, which was granted.

[1] The charter of the city of Houston is a special one, granted by the Legislature of Texas, and its provisions have the same effect as other statutes of the state, and the public, as well as the courts, must take notice of them. The section in question is a condition precedent to the right of action, and it is incumbent on the plaintiff to affirmatively allege the giving of the prescribed notice. See Dillon on Municipal Corporations (5th Ed.), § 1613; City of Dallas v. Shows, 212 S. W. 633.

It was necessary, therefore, to plead compliance with this provision, if the latter applied to a state of facts as pleaded here, unless said provision of the charter was waived by the city, or the latter was estopped from asserting it by reason of the action of its officers. Did it so apply?

[2] It is conceded by all parties hereto that charter provisions like the one now under discussion, and which obtain in practically all the larger cities, have been uniformly upheld. Not only so, but the higher courts have, almost without exception, required strict compliance therewith. Numerous authorities from all the states could be cited, but we content ourselves with referring to a few in Texas, as follows: Parsons v. City of Ft. Worth, 26 Tex. Civ. App. 273, 63 S. W. 889; Luke v. City of El Paso (Civ. App.) 60 S. W. 363; English v. City of Ft. Worth (Civ. App.) 152 S. W. 179; City of Ft. Worth v. Shero, 16 Tex. Civ. App. 487, 41 S. W. 704 (writ of error denied by the Supreme Court); City of Dallas v. Shows, 212 S. W. 633.

McQuillin on Municipal Corporations, § 2715, says in this connection:

"Such requirements are enacted in furtherance of the public policy, and their object and purpose is to protect the municipality from the expense of needless litigation, and give it the opportunity for investigation, and allow it to adjust differences and settle claims without suit."

This eminent authority might have added, as some others do, that such provisions also enable the cities to get their proof in hand before the witnesses scatter, and while the facts are fresh in their minds. In other words, such notice aids the governing boards of cities to know the facts and to pay claims without suit, where just, or to conserve the evidence for litigation where that becomes necessary. After all, such notice does not affect the question of liability of the city for its acts. It is only a prerequisite to even the assertion in court of a claim of liability by the injured party.

[3] But while conceding that, as a general rule, this provision of the charter is applicable and should be enforced, Cawthorn contends that it does not apply in his case for two reasons: (1) That the negligence complained of was the act of the city itself, and notice was unnecessary; (2) that the city was acting in its proprietary, as distinguished from its governmental, capacity, and is liable to Cawthorn as an employee, just as a private employer would be.

Let us consider said contentions in their order. Counsel for Cawthorn seriously urged that, under the decision of the Supreme Court of Texas in case of City of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693, the provision of the charter now under discussion does not apply to a case where the injury is the result of an act of the city itself. The case of Houston v. Isaacks, supra, announced a correct principle of law, and has been often followed by the higher courts of Texas. However, the first case in which the Court of Civil Appeals of this state so construed said authority as to uphold the contention now being urged by Cawthorn was the case of Shows v. City of Dallas (Civ. App.) 172 S. W. 1137. A writ of error was granted by the Supreme Court in this case. The opinion therein was later written by Presiding Judge Sonfield, of Section A of the Commission of Appeals. See City of Dallas v. Shows, 212 S. W. 633. In that opinion the court says:

"The provision in defendant's charter requiring notice of the injury as a condition precedent to a suit for such injury is valid. It is wholly immaterial that the injury was the result of the act of the city itself. City of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693, does not hold otherwise. In that case the court had under consideration a charter provision to the effect that the city should not be liable to any person for damages caused from the defective condition of streets, ways, crossings, etc., unless same remained in such condition ten days after special notice in writing given to the mayor or street commissioner. The court held such notice unnecessary when the defect was caused by the action of the city itself. The question therein involved was notice of the defect, not of an injury the result of such defect."

The Commission of Appeals in the case just quoted further held that, even though the injury was the act of the city itself, injuries to the person cannot be recovered unless a provision of a city charter similar to the one at bar has been complied with.

This recommendation of the Commission of Appeals was adopted by the Supreme Court, and said holding approved by the latter. Consequently this contention of Cawthorn's must be overruled.

[4] The next inquiry is whether or not injuries to employees, as distinguished from the public generally, are within the requirement of the charter provision in question. We have carefully reviewed all the authori-

ties cited, and made considerable independent investigation. We find no authority sustaining Cawthorn's contention in this connection. In attempting to construe provisions like the one now being considered, we are in complete accord with Section A of the Commission of Appeals in the case of City of Dallas v. Shows, supra, when that court says:

"The requirement of notice of injury as a condition precedent to an action, while valid and in accord with sound public policy, is in derogation of common right, and should therefore be construed with reasonable strictness, and not extended by implication beyond its own terms, or held to apply to such damages as are not within its clear intent. 28 Cyc. 1450."

The language of the provision is all inclusive, and broad enough to cover personal injuries to any one. Reading all the provisions of said section, separately and in connection with each other, we think the article covers and includes injuries to employees as well as others. Not only so, but there would seem to be as much reason for requiring this notice of employees as of others. It is true the employee works for the city, and some of the authorities of the city would be more likely to have independent knowledge of his injuries than of accidents to outsiders. But in most cases the mayor and commissioners, who alone have power to settle claims for damages, do not know the employees personally. Furthermore, this article of the city charter requires much more information than the mere happening of the accident and the time and place thereof. We think employees are within the provision of the charter, and this contention of Cawthorn's should also be overruled.

Counsel for Cawthorn seems to confuse the article of the charter in question with another article of said charter, which requires notice of defects in sidewalks, and which does actually affect the liability of the city upon a trial of a case in court on its merits. The article in question has nothing to do with the determination of the liability of the city upon the trial of a case on its merits. For that reason, if a city should be liable to its employees just as a private employer is, that would have nothing to do with the section of the charter now under discussion.

[5] We think the Court of Civil Appeals in this case correctly held this provision of the charter applicable to the case at bar, and that the general demurrer was properly sustained by the trial court, unless the city had waived strict compliance therewith, or had so acted as to be estopped from demanding it of Cawthorn as a condition precedent to his right to bring this suit.

Upon these latter points the Court of Civil Appeals held: (1) It had serious doubts whether or not any of the officers of the city of Houston had authority to waive this provision in its charter; (2) if it had such authority, the waiver must be by the mayor and commissioners, and not by one commissioner alone; (3) that the action of Commissioner Drennan was not a waiver of the provision of the charter, but only an invitation to Cawthorn to present his claim to the council as by law provided.

The Court of Civil Appeals cites no authority to sustain any of said rulings nor does the city of Houston do so. The important inquiry, then, in that connection, is whether or not the doctrine of waiver and estoppel can be applied to municipalities and their governing boards in a state of facts like those at bar. The courts of last resort in several states have answered this inquiry in the affirmative, within certain bounds. We call attention to a few of such authorities.

The Supreme Court of Illinois in the case of City of Chicago v. Sexton, 115 Ill. 230, 2 N. E. 263, says:

"We hold simply that a municipal corporation may be estopped by the action of its proper officers, when the corporation is acting in its private, as contradistinguished from its governmental, capacity, and has lawful power to do the act."

Again, the Supreme Court of Nebraska, in the case of Trust Co. v. City of Omaha, 63 Neb. 280, 88 N. W. 523, 93 Am. St. Rep. 442, says:

"The correct rule, therefore, is, and should be, that the doctrine can be appealed to effectively, as against a municipal corporation, only when it is acting in its private as contradistinguished from its public or governmental capacity. There may be, and probably are, exceptions to the rule stated, as when a municipality has gained a clear and decided advantage by the act relied on to operate as an estoppel, when equity will prevent it from retaining the advantage, and at the same time deny its binding force."

The Supreme Court of Texas is in accord with the Nebraska decision just quoted, as will be seen from its opinion in the case of Krause et al. v. City of El Paso, 101 Tex. 216, 106 S. W. 121, 14 L. R. A. (N. S.) 582, 130 Am. St. Rep. 831. In that case certain individuals owned a brick house located on a triangular lot in the business portion of the city of El Paso, and the building encroached on the street. However, it had been erected after the owners had complied with the ordinance covering erections of buildings and laying out of street lines. The owners had also built sidewalks along the said building lines, as demanded by the city authorities. After many years, the city ordered the removal of said building, as it was in the street. The district court and the Court of Civil Appeals sustained the city's contention. Justice Brown, writing the opinion in this case said:

"To justify a reversal of the judgments of the Court of Civil Appeals and district court it must appear that the city was estopped to claim the ground as a part of the public highway, or that the facts show that the city had abandoned the use of that part of the street. The defendants in error submit the proposition that a municipal corporation cannot convey the public streets of a city to private individuals for private use. Therefore the title to the streets cannot pass from the corporation to the citizen by estoppel."

Again, he said:

"Ordinarily a municipal corporation is not subject to estoppel by reason of the negligent or unauthorized acts of its officers, but it is generally recognized that there are exceptions to that rule."

Still further he said:

"Why should a municipal corporation, which has led a citizen into error and caused him to expend large sums of money in the erection of permanent improvements upon a portion of the highway, after 20 years' occupancy, be permitted to destroy the improvements without compensation, simply to assert a legal right? A sense of justice common to all civilized people revolts at such a rule of legalized wrong."

The Supreme ·Court, in the case just quoted, reversed the judgment of the lower court, and perpetually enjoined the city of El Paso from removing said house from its then location. It applied the doctrine of estoppel in said case.

It will be seen from the above opinion that in Texas the doctrine of estoppel not only applies generally where the city is acting in its proprietary capacity, but also by reason of the negligence or unauthorized acts of its officers, where the equities of the situation demand it.

In the light of the above authorities, let us now consider their application to the case at bar. In hauling sand with its own teams and distributing it generally over the city, the latter was undoubtedly acting in its proprietary capacity, and in adjusting claims for damages arising therefrom it continues to act in that capacity. The courts of Texas recognize the distinction aforesaid between the capacities in which a city acts. The Supreme Court in the case of Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909, speaks as follows:

"A municipal corporation proper—a city, for example—acts in a twofold capacity, certain functions are conferred upon it in the interest of the public at large and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held, as a rule, not to be responsible; but for their torts in discharging duties of purely corporate character, the corporation is liable."

In the case just quoted the Supreme Court held that the cleaning of the city streets and

231 S.W.—45

disposal of garbage is not the performance of a duty primarily resting on the state, but is the exercise of a corporate power, as distinguished from a governmental function, for the abuse of which the city is liable.

[6] The mayor and commissioners of the city of Houston are vested with broad general powers. They have the right to do everything in the management of the city's affairs which is not prohibited by its charter. They alone have authority to adjust and settle claims for damages against the city. The provision in question is one of procedure only, and is but an aid to the mayor and commissioners in passing upon the liability of the city in any given case. Whether or not they could waive this provision after the 90 days had expired we do not say. We doubt it. But they are not prohibited from waiving it during the 90 days' period. The charter does not prohibit a waiver at any time. If the mayor and commissioners are willing to investigate a given case themselves, and attempt to compromise the same during the 90 days period, we see no reason why they should not be permitted to do so. The provision is solely for their convenience. We think they can waive strict compliance with this provision. A waiver, in law, is the voluntary relinquishment of a known right, and if, under the facts, a jury can say that the mayor and commissioners intended to waive strict compliance with this provision, such compliance would not be necessary as a condition precedent to the maintenance of this suit for damages. The question of waiver is ordinarily one for a jury, where intention of the parties is not clear. For a case in point, and a charge approved, see Railway Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 747, in which a writ of error was denied by the Supreme Court.

[7] We differ with the Court of Civil Appeals as to a reasonable interpretation of the acts of Drennan, as they apply to this question of waiver. We think the reasonable conclusion from it all is that a strict compliance with the charter provision was waived, if plaintiff's allegations were true, and only a partial compliance therewith in a reasonable time was the desire of the city. But, at any rate, Cawthorn was entitled to have the jury pass upon the facts and interpret the intention of the city officials therefrom.

[8] The Court of Civil Appeals say that it certainly cannot be held that one commissioner can waive this provision. That is not the point. Cawthorn alleges that Commissioner Drennan was authorized by the mayor and his colleagues to approach the claimant and offer him a compromise and invite him to their office to discuss it. The mayor and other commissioners could authorize Drennan to act for them. If he was their agent, they were all bound. It follows from what has been said that we think the Court

of Civil Appeals erred in its various holdings relative to the question of waiver.

[9] Again, the doctrine of estoppel applies to this case, in our opinion. No matter whether the mayor and commissioners intended to waive strict compliance with the charter provisions or not, we think the evidence raises the issue of estoppel. If, from the allegations of Cawthorn, the mayor and commissioners, through their agent, Drennan, so conducted themselves as to lull the claimant into a sense of security, causing him to think they were waiving said charter provision, and if an ordinarily prudent person, under the same or similar circumstances, would have so concluded, then the city is estopped to demand strict compliance with the charter provisions. If the allegations of Cawthorn are true, there is much reason to conclude that, as a matter of law, the city is estopped. But we rather think this question of estoppel, and all issues of fact in connection therewith, should be submitted to the jury under appropriate instructions for their determination.

This charter provision is hard enough, at best, on those who are injured by the city. It is in derogation of common right. City officers' must not act in such a way as to lead people into a trap, and cause them to delay strict compliance with the charter provision until the 90 days have expired.

We think the jury should be given a chance, upon a trial of the case, to pass upon the questions of waiver and estoppel as above outlined. If said issues are decided in favor of Cawthorn, then he can maintain his suit, without either pleading or proving strict compliance with said charter provision. As we view it, the general demurrer was erroneously sustained for the reasons hereinbefore set out.

Therefore we recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and the cause remanded to the former for a trial in conformity with our views.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

———————

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied June 23, 1921.