## CITY OF TEXARKANA v. ROBERTS.
### No. 3832.

Court of Civil Appeals of Texas. Texarkana.
April 4, 1930.

Rehearing Denied April 24, 1930.

552

William V. Brown, of Texarkana, for appellant.

Elmer L. Lincoln, of Texarkana, for appellee.

HODGES, J.

The appellee is the owner of a house and lot situated on the west side of Jeanette street 50 feet south of its intersection with Seventh street in the city of Texarkana. The diagram below shows the location of the lot and the adjacent streets:

In 1926 the city determined to pave Seventh street, and that portion of Jeanette street lying north of Seventh street, with concrete. In making the improvements some changes were made in the course and method of the drainage in that locality. In March, 1927, the appellee filed this suit to recover damages to her house and lot by overflows caused by the changes in the drainage made by the city in doing the paving. It is alleged, in substance, that by changing the course of the drainage and reducing the capacity of the outlets for water more water from normal rainfalls was caused to flow onto and flood the appellee's lot, and as a result the foundation of her house had been damaged and her shrubbery injured and destroyed, and that it would be necessary to incur considerable expense in elevating her lot so as to prevent overflows from water collected in the adjacent streets. Other items of damage were pleaded which will be referred to later.

In addition to a general and special answer, the city urged as a defense the failure of the appellee to plead and prove that prior to the filing of her suit she had given the city notice of her injury as required by the city charter. After overruling the demurrers and exceptions, the case was submitted to the jury on the following special issues:

"No. 1. Do you find from a preponderance of the evidence that the City of Texarkana, Texas, in paving the streets changed the drainage course of and along same in such a manner as to cause water from normal rainfalls to overflow plaintiff's property?

"Answer Yes or No. (Jury's Answer: Yes.)

"No. 2. Do you find from a preponderance of the evidence that the City of Texarkana in paving its streets decreased the drainage passage of water along, over or under same to the extent of causing water from normal rainfalls to overflow plaintiff's property?

"Answer Yes or No. (Jury's Answer: No.)

"If you have answered each of the two preceding questions 'No,' then you need not answer the following question; but, if you have answered either of the two preceding questions 'Yes,' then answer the following:

"No. 3. What amount of damage, if any, do you find from a preponderance of the evidence, that plaintiff has sustained to her property by reason of such overflow of water, if any?

"Answer in dollars and cents. (Jury's Answer: $400.00.)"

In accordance with the finding of the jury, a judgment for $400 was entered in favor of the appellee.

Upon the measure of damages the court gave the following instruction:

"In estimating plaintiff's damages, if any, you are instructed that you may consider the reasonable cost, if any, of filling in her lot with dirt and raising it to where it would be above the overflow which could reasonably be expected; the reasonable cost of repairing the damage, if any, caused to the foundation, floors or papering of her house and putting the same back into substantially the same condition as existed prior to the time said damage, if any, was sustained, excepting for the natural wear and tear and depreciation of said house; the reasonable loss from the destruction, if any, of her flowers, shrubbery, garden and strawberry beds; and the damage, if any, which she has (been) occasioned from the loss of the sale of flowers, if any, caused by said overflows. But you will in no event consider any damage or allow any compensation to the plaintiff except such loss or damage as she may have sustained as a direct and proximate result of the acts of the defendant in causing, if the defendant caused, or permitting, if the defendant permitted, the water to overflow on her property, and which would not except for the acts of the defendant have otherwise overflowed said property."

The charter contains the following provision:

"*Damages.*—Before the City of Texarkana, Texas, shall be liable for any damages of any kind, the person claiming damages or some one for such person shall give the City Secretary or Mayor notice in writing of such injury, within not to exceed thirty days after the same shall have been received, stating in such notice when and how the injury occurred, and the cause and extent thereof; and the city shall not be liable unless such notice shall have been given within the time and the manner herein provided; provided, that this section shall not apply to minors who are under

the age of fourteen years and without parents or guardian."

The first question presented in this appeal is: Was it necessary for the plaintiff to give the notice required by that provision before filing this suit? Similar provisions in charters of other cities have been before the courts for consideration, and it has been uniformly held that in the absence of more specific language the word "injuries," of which notice must be given, means injuries to the person, and does not include damage to property. City of Dallas v. Shows (Tex. Com. App.) 212 S. W. 633; City of San Antonio v. Pfeiffer (Tex. Civ. App.) 216 S. W. 207; City of Fort Worth v. Ashley (Tex. Civ. App.) 197 S. W. 307. Such provisions are treated as limitations upon common-law rights, and should be given a reasonably strict construction. In the first case cited the following provision of the Dallas charter was under consideration:

"Before the city of Dallas shall be liable for damages of any kind the person injured, or some one in his behalf, shall give the mayor or city secretary notice in writing of such injury within thirty days," etc.

In discussing that provision the Commission of Appeals used this language:

"The portion of the section dealing with notice of the defect follows that with reference to notice of the injury. Notice of the defect is by express language made a condition precedent to a recovery for injury to person or property. In the provision for notice of the injury, no specific mention is made of injury to property. The phrase in this provision 'damages of any kind,' considered alone, would, of course, be sufficiently broad to include damages to either person or property. The notice provided for is to be given by 'the person injured.' In a sense, a person is injured when his property is injured. We believe, however, that a proper construction of the provision, read in its entirety, and in view of the omission of mention of injury to property, while property is specifically mentioned in the same section in reference to notice of the defect, evidences an intention that the requirement as to notice of injury should apply exclusively to the person. The requirement of notice of injury as a condition precedent to an action, while valid and in accord with sound public policy, is in derogation of common right, and should therefore be construed with reasonable strictness and not extended by implication beyond its own terms or held to apply to such damages as are not within its clear intent. 28 Cyc. 1450. Notice of injury to property is not clearly expressed, nor can it be said that the intent to include such injury is clearly manifest.

"We conclude that the Court of Civil Appeals correctly held that the trial court erred in sustaining the general demurrer to the petition, the same stating a cause of action for recovery for injury to property, but we hold the petition subject to special exception in failing to allege notice of injury to the person."

That rule may now be regarded as the established doctrine in this state. There is no material difference between the verbiage of the Texarkana charter provision and those discussed in the cases referred to. While the appellee included some personal injuries among those sued for, they were eliminated in the charge of the court on the measure of damages.

■ The next question is: Does the evidence support the findings of the jury? The only finding on the controlling issues upon which the judgment in favor of the appellee can rest is this: That in paving the streets the city changed the drainage course of and along same in such a manner as to cause water from normal rainfalls to overflow plaintiff's property.

The second issue, in which the court submitted the question as to whether there had been a decrease in the drainage passage of water "along, over or under the streets" to the extent of causing water from normal rainfalls to overflow plaintiff's property, was decided against her. The evidence showed without dispute that the natural drainage of water that fell in that locality was from the north, east, and south to the intersection of Jeanette and Seventh streets, near plaintiff's property. There was some testimony tending to show that prior to the street paving there was a ditch on the north side of Seventh street, through which the water that fell on the north side of that street flowed west; that since the paving the outlet for water on that side of Seventh street had been so changed that the water ran across Seventh street and onto the appellee's property in larger quantities than before.

The appellee testified that she had been living on that lot, occupying the house as her residence, for a number of years before the streets were paved in 1926; that only one time during her residence there prior to the street improvements had her property been overflowed by water; and that was the result of a very heavy rainfall. Prior to the street paving the natural drainage of the water was north from Sixth street to Seventh street, and from there it flowed west. When the paving was done a ditch was made in front of appellee's lot in an effort to turn the flow of water south from Seventh to Sixth street. She testified that since the streets were paved the water flows across Seventh street and apparently concentrates at the southeast corner of the intersection of Seventh and Jeanette streets; a part of it flows west, and a part of it whips around and runs onto her property. She stated that several times since the street paving her property had been flooded to such an extent that she had to

abandon it; that the water was sometimes knee-deep in her yard, and made it practically impossible for her to reach the street car line; that as a result of the flooding of her property by overflow she has had to abandon her residence on the place and find a room elsewhere. While the evidence as a whole is not satisfactory, we cannot say as a matter of law that it was not sufficient to support the finding of the jury upon the first issue submitted.

■ The third question is: Are the findings of the jury conflicting? Appellant contends that they are, and that for that reason the court was not authorized to render a judgment thereon. In answering the first question, the jury found that in paving the streets the *drainage course* had been changed in such a manner as to cause water from normal rainfalls to overflow the plaintiff's property. In answering the second issue they found that the drainage *"passage of water along and over the same" had not been decreased* in such a manner as to cause water from normal rainfalls to overflow plaintiff's property. We do not think there was any necessary conflict in the two findings.

The judgment will therefore be affirmed.