ED. THOMPSON v. THE STATE.

No. 9288.   Delivered June 3, 1925.

Rehearing Granted October 21, 1925.

1.—Manslaughter—Evidence—Held Admissible.

Where on a trial for manslaughter, it being in evidence that the difficulty terminating in the homicide, grew out of an effort of appellant to get from the deceased a pistol, claimed by appellant, it was not error, after the appellant had denied the fact, to permit the state to prove a conversation by appellant with one Polley, which tended to strengthen the state's theory as to the cause of the difficulty.

**2.—Same—Evidence—Properly Admitted.**

Where appellant introduced a witness, who testified favorably to him, it was not error to permit the state on cross-examination to show that such witness was active in encouraging appellant in the difficulty, and to show the acts and conduct of such witness at the time and shortly prior to the killing, for the purpose of showing his interest and bias in favor of the appellant.

ON REHEARING.

**3.—Same—Evidence—Part of Conversation—All Admissible.**

Appellant urges in his motion for rehearing that we were in error in our original opinion in holding the cross-examination of appellant's witness Garrison admissible. We cannot agree with him as it is a well settled rule, and prescribed by statute, that where one party introduces a witness and brings out a part of a conversation, the opposing party has the right on cross-examination to elicit all of the conversation relating to the same subject-matter. See Art. 811.

**4.—Same—Requested Charge—On Self-Defense—Erroneously Refused.**

Where appellant's theory, supported by evidence was that deceased began the difficulty and fired upon appellant first, then ran, pursued by appellant, and continuing to shoot at appellant, it was error to refuse a requested charge embracing this theory. If in the exercise of the right of self defense it becomes necessary that one assailed pursue his adversary, he may lawfully do so as long as is necessary for the protection of his own life. For the error in refusing to give the requested charge, the motion for rehearing is granted and the judgment reversed, and remanded.

Appeal from the District Court of Shelby County. Tried below before the Hon. Chas. L. Brachfield, Judge.

Appeal from a conviction of manslaughter; penalty, five years in the penitentiary.

The opinion states the case.

*Sanders & Sanders*, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

BAKER, Judge.—The appellant was convicted in the district court of Shelby County of the offense of manslaughter, upon an indictment charging him with murdering one Lamar Blount, and his punishment assessed at confinement in the penitentiary for a term of five years.

Bill of exceptions No. 5, complains of the action of the trial court in permitting the State upon cross-examination to ask the appellant while upon the stand if he didn't have a certain conversation with one Will Polley relative to having a gun and that he wanted it, which the appellant denied any such conversation with said Polley about any gun, and the State introduced the witness Singleton, who testified that prior to the homicide, that he heard the de-

fendant in a conversation with said Polley saying, "If you will get
the gun I will buy it  *  *  *  boy, you are talking too loud, the
church deacons are going to raise a racket about talking too loud."
The objection being to such testimony that it was hearsay and was an
attempt to impeach the defendant on an immaterial issue. We can-
not agree with this contention. The record discloses that the hom-
icide arose between the deceased and appellant over a pistol that
the defendant had sold to one Matlock which the deceased had pur-
chased from said Matlock and the defendant was seeking to re-
cover said pistol from the deceased at the time of the homicide; it
being the contention of the State and if the State's witnesses were
to be believed by the jury, that the defendant was the aggressor
in bringing on the difficulty in seeking to forcibly take from the de-
ceased at the time the pistol in question. We believe that this evi-
dence was admissible for the purpose of showing to the jury that
the defendant was contemplating obtaining the possession of the
pistol or tending to show that he was after the pistol in question,
and there was no error upon the part of the court in admitting
same.

In bills of exception No. 8 and 9, the appellant complains of the
court's action in permitting the State upon cross-examination of
the defendant's witness Garrett to ask him if he didn't state to the
defendant before the killing "are you going to let that negro get
away?" which was denied by said witness, and in permitting the
State to prove by the witness Singleton that he did hear the said
Garrett prior to the killing make such statements to the defendant,
it being contended by the defendant that said testimony was prej-
udicial and was impeaching the witness on an immaterial matter.

Complaint is also made to the action of the court in permitting
the State on cross-examination to ask said witness Garrett where he
had his horse hitched on the night of the homicide, to which he re-
plied it was close to the spot where the difficulty began, and then to
the action of the court in permitting the State to prove by the
State's witness Matlock that said witness Garrett had his horse
hitched at another place and near the church, it being urged that
said testimony of the State was prejudicial to the defendant as
shown in said bills and that it was impeaching the witness on an
immaterial issue; we cannot agree with either one of the contentions
above urged for the reason that if the State's witnesses are to be
relied upon in the case, and if the State's theory was correct, the
defendant's witness Garrett was acting with the defendant all along
and in effect was urging the difficulty that resulted in the homicide
and was present during all of the entire controversy between the
defendant and deceased and was taking a very active part therein.
If this were true the State would certainly be entitled to intro-

duce any fact or circumstance which would be of benefit to the jury in showing the attitude of the defendant's witness, and we fail to see any error in the action of the court in admitting this testimony.

In bill of exceptions No. 13, complaint is made that the court committed error in refusing to submit to the jury his special charge No. 1, as follows:

"I further charge you as a part of the law in this case, that the defendant has the right to follow and to continue to shoot as long as it appeared to him that there was danger."

The court in his general charge, charged the law fully of self defense embodying apparent and real danger, concluding that with the following statement:

"But the party assaulted may continue to shoot as long as it appears to him there is danger."

After a careful consideration of the evidence in the case and the court's charge thereon, we are of the opinion that the complaint made by appellant is not tenable and that the court fully charged the law of this case as raised by the evidence thereon. The record fails to disclose any issue raised in the case demanding a special charge of the kind requested by the appellant as above set out. There was no witness, including the defendant himself, that testified to any facts which raised that issue. In facts, the appellant himself testified after the first shot was fired by the deceased "I was not expecting any thing. We all broke and run; I was scared like the rest. As to how come me to go down the road after Lamar Blount, I will say that is the way my face was, if I had been turned back the other way, I suppose I would have run back the other way. Just as soon as I saw I was headed for Lamar Blount, I stopped; he had done turned and shot me then."

The above is the nearest to any statement from any witness tending to bring in question the point sought to be covered by said special charge, and it will be readily seen that the defendant did not contend that at the time he shot and killed the deceased, that the deceased was seeking to reach any point of vantage from which to shoot and kill him, and we are, therefore, of the opinion that the court was clearly right in not submitting this issue to the jury.

After a careful consideration of the entire record, we fail to observe any error committed upon the trial of this case that would warrant this court in reversing same, and said judgment of the trial court is therefore affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant insists that we misunderstood bill of exceptions No. 5. We think not. It appears in the bill that Austin Singleton testified as follows: "I heard the defendant, Ed. Thompson, in a conversation with Bill Polley, say: 'If you will get the gun, I will buy it,' and Ed said: 'Boy you are talking too loud''. It is true that his statement was not in accord with the predicate laid for the impeachment of the appellant, but it seems to have been admissible as original testimony.

Arthur Garrett was called by the appellant as a witness and gave testimony favorable to the defense. In the course of the direct examination, Garrett testified than on the night of the homicide, he was present at church in company with the appellant and that he engaged in a conversation with the appellant, a part of which he detailed in his direct examination. He also detailed a conversation which he claimed to have overheard between the appellant and Lamar Blount, the deceased, in which the ownership of a pistol was discussed, Blount claiming to have bought the pistol and appellant claiming that it belonged to him. State's counsel asked the witness Garrett if during the conversation he had not said to Thompson with reference to Blount: "Are you going to let that negro get away?" Garrett denied making the statement. Later, the State called the witness, Singleton, who testified that Garrett did make the remark mentioned under the circumstances detailed. Objection was made upon various grounds, including the contention that it was an impeachment upon an immaterial matter, and further that it was permitting the State to impeach its own witness. This claim is based upon the fact that the cross-examination was not confined to the scope of the original examination. As we understand the record, appellant having introduced by Garrett a part of the conversation with the appellant, it was the State's right, on cross-examination, to develop other parts of the conversation relating to the same subject-matter. See Art. 811, C. C. P., where this right is conferred by statute. The testimony elicited by the State from Garrett was not foreign to his testimony upon the original examination, but on the contrary, related to the same matter, namely, the conversation in which he and the appellant engaged with reference to the deceased. Moreover, it was not, in our judgment, immaterial because the remark imputed to Garrett tended to show interest in the matter, that is, bias in favor of the accused and, prejudice against the deceased. The remark: "Are you going to let that negro get away?" was certainly susceptible of the interpretation mentioned when considered in the light of the other circumstances to which the witness Garrett testified upon behalf of the ap-

pellant. The animus or motive of a witness giving adverse testimony may be inquired into by the State without making the witness its own. The motive of the witness is not regarded as collateral or irrelevant. See Watson v. State, 9 Tex. Crim. App. 237, and many other cases collated in Branch's Ann. Tex. P. C., p. 94, Sec. 163; Underhill's Crim. Ev., 3d Ed., p. 505, note 36. An inquiry of the character mentioned for the purpose of laying a predicate for impeachment is permissible. See Harvey v. State, 37 Tex. Rep. 265; and numerous other cases cited in Branch's Ann. Tex. P. C., p. 109, Sec. 179. In our judgment, the facts before us do not come within the purview of the rule which forbids a part from contradicting a witness as to collateral matter which are immaterial and which are called out by him on cross-examination.

According to the evidence, the deceased, Blount, and the appellant, Thompson, met at a gathering. Blount had a pistol which appellant claimed belonged to him, Blount declared that he had bought the pistol from another party. According to the State's testimony, appellant told Blount that the pistol was not paid for and that it would be taken away from him by the appellant. At this juncture, according to the State's evidence, appellant drew his pistol, but before he was able to cock it, Blount drew his pistol and fired twice. After firing, he ran away. Appellant pursued and overtook Blount, whose pistol was discharged twice. Appellant then fired and inflicted the fatal wound upon Blount. Appellant's testimony was to the effect that when he demanded his pistol, Blount drew his pistol and fired twice, one of the shots striking the appellant, and another striking his companion, and that it was not until after these shots were fired that the appellant drew his pistol. He then pursued Blount who fired two additional shots at the appellant, one striking him before his pistol was discharged.

Appellant excepted to the court's charge on self-defense because it failed to embrace the law applicable to the facts in that it ignored the issue as to the right of the appellant to pursue the deceased. Upon this issue, in addition to the exception, appellant presented a special charge to the effect that he had a right to follow the dedeceased and continue to shoot as long as it appeared that there was danger. The refusal of the special charge could not be regarded as error for the reason that it took no note of the issue of fact touching the beginning of the difficulty. If the State's testimony was true, the appellant, after demanding that the deceased deliver the pistol, threatened to take it from him, and at the same time drew his pistol. The deceased then drew his pistol, but owing to the fact that his was a self-acting pistol, he was able to fire first. If this was true, appellant was the aggressor, and it would be manifest that he had no right to pursue and shoot at the deceased if the facts

were as, contended by the State. If, however, they were as contended by the appellant, namely, that the deceased was the aggressor, and drew his pistol and fired twice at the appellant and then retreated, still having his pistol in his possession and in a threatening attitude, and later fired twice at the appellant, it is believed that the issue suggested by the charge was one upon which the court should have instructed the jury. If in the exercise of a right of self-defense, it becomes necessary that one assailed pursue his adversary, he may lawfully do so as long as, for the protection of his own life, the necessity continues. See West v. State, 2 Tex. Crim. App. 476; Walton v. State, 34 Tex. Crim. Rep. 92; Stanley v. State, 44 S. W., Rep. 519; Johnson v. State, 50 S. W., Rep. 343; Wilson v. State, 46 Tex. Crim. Rep. 527; Flewellen v. State, 83 Tex. Crim. Rep. 568; Morgan v. State, 43 Tex. Crim. Rep., 549. See also Branch's Ann. Tex. P. C., Secs. 1967 and 1968.

Upon the record before us, it is believed that the appellant was entitled to have embraced in the charge on self-defense, the law applicable to his right to pursue, provided he was not the agressor, and so long as the necessity, viewed from his standpoint, continued.

The motion for rehearing is granted, the affirmance is set aside, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*