**Robert Glenn TAYLOR, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–485–CR.**

Court of Appeals of Texas, Fort Worth.

June 12, 1997.

---

Before CHUCK MILLER, J., (Sitting by Assignment), RICHARDS, J., and CHARLES F. CAMPBELL, J., (Sitting by Assignment).

## OPINION

**PER CURIAM.**

Appellant Robert Glenn Taylor was indicted for the offense of murder, enhanced by two previous felony convictions. He pled not guilty to a jury, and after hearing evidence, the jury found him guilty of the lesser included offense of voluntary manslaughter. Taylor pled not true to the enhancement allegations, and at the completion of the punishment stage of the trial, the jury found the enhancement paragraphs true and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. On appeal Taylor brings eleven points of error, alleging that the evidence was insufficient in several respects, that he received ineffective assistance of counsel, that the trial court erred in overruling his request for certain jury instructions, that the prosecutor committed misconduct in his opening statement and in his jury argument, and that the trial court erred in admitting certain records of his prior convictions. We affirm.

The evidence adduced at trial showed that the victim, Ray Anthony Taylor, Taylor's half-brother, was living with his mother, Unuda Hyson, and his sister Nancy on October 26, 1991. Hyson was divorced from Taylor's father, Alex Taylor. Taylor was living with Alex at the time of the homicide. On October 26 Taylor and Alex went to Hyson's residence. They were met at the front door by Hyson and Ray. At first Alex was in front of Taylor, but Taylor moved Alex aside, pulled out a gun, and shot Ray. During the quickly evolving events Hyson had begged Taylor not to shoot Ray, who, after being shot, staggered back toward the kitchen and collapsed in the dining room. Hyson was sure that this bullet hit Ray. Taylor followed Ray, fired a second shot, and then ran out of the house. One of the bullets passed through Ray's lungs and heart, causing his death. A brick was later found next to the deceased by the police. In connection with the brick, Hyson said that she did not see anything in Ray's hands but, really, did not see his hands and that earlier in the day there was no brick on the floor where Ray fell. No second bullet was recovered from

the body or the scene. The medical examiner testified that Ray was killed by a bullet that traveled through his body, and that he received no other bullet wound.

Additionally, evidence was proffered that before the shooting Hyson had left a message on Alex's answering machine, saying that Ray "is not right," and asking Taylor to get in touch with her. Alex testified that Hyson came out of the front door crying. He further testified that at the front door Ray first slammed the door wide open, then had his hands behind his back, as if to hide a weapon, and that Ray was cursing as he said "I got both you sons of bitches which one of you called the cops?" [sic]. Hyson also reportedly told Alex a few days after the shooting, "I don't know why Ray was shot when all he had was a brick."

■ In his first point of error, Taylor complains that the evidence is legally insufficient to prove voluntary manslaughter. Taylor's second point of error complains that the evidence is factually insufficient to prove the offense of voluntary manslaughter. The record reflects that the charge on the lesser included offense of manslaughter was submitted at Taylor's request and without any objection from Taylor. Case law is clear that in a situation where a defendant does not object to the submission of a lesser included offense, and thereby accepts the benefit of such a charge in the court's instructions, that defendant is estopped from thereafter challenging the sufficiency of the evidence to support a conviction for that lesser offense. See State v. Lee, 818 S.W.2d 778, 781 (Tex. Crim.App.1991); Bradley v. State, 688 S.W.2d 847, 853 (Tex.Crim.App.1985).

■ Taylor's first point of error also complains that the evidence was legally and factually insufficient to disprove the submitted issue of defense of a third party. In support of this contention, Taylor points to the evidence that Hyson had left a message on Alex's answering machine that Ray "is not right," that Hyson could not say Ray did not have a brick in his hand, that a brick was found beside where Ray fell and it was not there earlier in the day, and that Ray was cursing and abusive to Alex.

■ When a defensive issue is raised, the burden is on the State to disprove the defense beyond a reasonable doubt. See TEX. PENAL CODE ANN. § 2.03(d) (Vernon 1994). Where, as here, a defensive issue is presented to the jury and a challenge to the legal sufficiency of the evidence admitted to rebut the defensive issue is made, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt, and also would have found against appellant on the defense issue beyond a reasonable doubt. See Saxton v. State, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991).

■ Factual insufficiency of the evidence may be raised on appeal to challenge a verdict or judgment of the court. See Clewis v. State, 922 S.W.2d 126, 128–29 (Tex.Crim. App.1996). According to Clewis, when addressing a factual sufficiency complaint, we must consider and weigh all of the evidence "without the prism of 'in the light most favorable to the prosecution,'" as required under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Id. at 129. We should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See id.

■ On appeal, when dealing with a legal sufficiency challenge, an appellate court is governed by the legal axiom that the trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. See Bonham v. State, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), cert. denied, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). "It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done." Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim. App.1988). The jury is free to believe or disbelieve the testimony of any witness, and to reconcile conflicts in the testimony and accept or reject any or all of the evidence on either side. See Upton v. State, 853 S.W.2d 548, 552 (Tex.Crim.App.1993); see also Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.

App.1992). Further, any party can impeach his own witness, and is not therefore burdened with the necessity of vouching for the credibility of any or all of the testimony of a witness that party sponsors. *See* TEX. R.CRIM. EVID. 607; HULEN D. WENDORF ET AL., TEXAS RULES OF EVIDENCE MANUAL VI, VI–35 to 36 (4th ed.1995).

■ On appeal, when dealing with a factual sufficiency challenge, an appellate court reviews the fact finder's weighing of the evidence, although it cannot substitute its judgment for that of the fact finder. *See Clewis,* 922 S.W.2d at 133. The appellate court begins with the presumption that the evidence is legally sufficient under *Jackson* to support the verdict and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 134.

In this case the evidence is uncontroverted that Taylor, not Alex or anyone else, shot Ray, and that the shot caused Ray's death. There was no affirmative evidence that Ray was attempting to strike either Alex or Taylor with any object. Enough speculative evidence was introduced to convince the trial court to include an issue of defense of a third person in the charge, but the evidence falls far short of that necessary to support a challenge to the sufficiency of the evidence to disprove the defensive issue. This is true, we hold, under either the *Jackson* or *Clewis* standard of review. Taylor's first and second points of error are overruled.

■ In his third point of error, Taylor complains that he received ineffective assistance of counsel. Specifically, he complains that his attorney was ineffective for not making an opening statement, for failing to mention alleged discrepancies in the State's evidence during final argument, for requesting a charge on duty to retreat, for not objecting to the charge on the lesser included offense of voluntary manslaughter, for failing to obtain a ruling on one objection, for failing to object to a portion of the State's final argument, for not following procedural steps con-

cerning one of the enhancement allegations, for causing the long delay in his incarceration that resulted in a critical witness not being available for the defense at trial, for giving an inadequate final argument, and for waiving opening argument.

In reviewing such a claim involving error at the guilt/innocence stage of the trial, the standard of review is that Taylor must demonstrate: 1) that his lawyer's performance was deficient, i.e. that the lawyer made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and 2) that the deficient performance prejudiced the defense because the errors were so serious that they deprived the defendant of a fair trial. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).[1] Appellate courts will engage in the strong presumption that counsel's performance was reasonable. *See Patrick v. State,* 906 S.W.2d 481, 495 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996); *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). The test is applied as of the time of trial, and not through the advantage of hindsight. *See Hawkins v. State,* 660 S.W.2d 65, 75 (Tex. Crim.App.1983). The guarantee of effective assistance does not guarantee errorless counsel whose competency or accuracy of representation is judged with the perception of events after they have occurred. *See Ex parte Prior,* 540 S.W.2d 723, 726 (Tex.Crim. App.1976). The *Strickland* test must be proven by Taylor by a preponderance of the evidence. *See Patrick,* 906 S.W.2d at 495. The second prong of the *Strickland* test is met by a defendant showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.; Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986).

---

1. This test is also applicable to claims of ineffective assistance of counsel brought under article I, section 10 of the Texas Constitution. *See Her-*

*nandez v. State,* 726 S.W.2d 53, 55–57 (Tex.Crim. App.1986).

At the punishment phase of the trial, the standard of "reasonably effective assistance of counsel" that was enunciated in *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App. 1980) applies, not the *Strickland* standard. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Crim.App.1996); *Black v. State*, 816 S.W.2d 350, 356 n. 9 (Tex.Crim.App.1991).

We note that many of the complained-of deficiencies appear from the record to be tactical decisions. Choosing to not make an opening statement, declining to mention alleged discrepancies in the State's evidence during final argument, declining to object to a portion of the State's final argument, waiving opening argument and giving a selective synopsis of the evidence in closing argument are all inherently tactical decisions that need to be made based on the way a trial is unfolding, the trial strategy employed, the experience and judgment of the defense attorney, and other factors. As such, they are not, under the facts of this case, decisions that rendered Taylor's lawyer's performance so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

▇▇▇▇ Of the additional allegations, the requested charge on duty to retreat was not given, and so we can say with confidence that Taylor's attorney's request that it be included does not undermine our confidence in the outcome of the trial. The requested charge on voluntary manslaughter was of course given and was the charge the jury settled on in returning their verdict. However, considering the evidence in the case, we believe that even if Taylor's contention that there is insufficient evidence to support such a verdict were true,[2] the request for inclusion of the charge was a tactical decision. Taylor was facing life in the penitentiary if convicted of the primary offense. The evidence for the State was neither weak, circumstantial, or impeached to any serious degree. The inclusion of the voluntary manslaughter option reduced Taylor's potential liability considerably. Again, this has all the earmarks of a

tactical decision approached with competence. We will not use hindsight to second guess such a tactical decision. *See Derrick v. State*, 773 S.W.2d 271, 273 (Tex.Crim.App.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *Butler*, 716 S.W.2d at 54.

▇▇▇▇ Concerning the allegation that the delay in trial caused the absence of a defense eyewitness at trial: Taylor brings nothing to show what evidence or testimony the witness might have brought and nothing to show that the witness would have been available had the trial commenced earlier. As such, Taylor has failed to carry his burden to show that, even if the witness's absence was caused by a legal performance so deficient that the lawyer was not functioning as the "counsel" guaranteed by the Sixth Amendment, the absence prejudiced the defense to the extent that it deprived the defendant of a fair trial. Moreover, Taylor brings nothing to show that the delay would not have occurred anyway and was attributable to his attorney's actions. Taylor has, in other words, failed in his burden to show that there is a reasonable probability that, but for counsel's alleged errors in not bringing the case to trial earlier, the result of the proceeding would have been different. *See Butler*, 716 S.W.2d at 54, 56.

▇▇▇▇ The remaining alleged errors, which concern failure to properly object to the State's opening statement and final argument, occurred at the punishment stage of the trial. Thus, the standard of "reasonably effective assistance of counsel" from *Ex parte Duffy* controls. *See Vaughn*, 931 S.W.2d at 566; *Black*, 816 S.W.2d at 356 n. 9; *Ex parte Duffy*, 607 S.W.2d at 516. Isolated instances of failure to object generally do not, in and of themselves, constitute ineffective assistance of counsel. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). Having examined the State's argument, under the facts of this case, we do not find that Taylor's attorney's complained-of actions denied Taylor reasonably effective assistance of counsel. *See Ex parte Duffy*, 607 S.W.2d at 516. Point of error number three is overruled.

2. This is a determination we do not make. See disposition of points of error numbers one and two.

In point of error number four, Taylor complains of the trial judge's denial of an instruction on the right to pursue. The appropriateness of such an instruction is found in *Hunter v. State,* wherein the Court of Criminal Appeals considered settled the propriety of charging the jury on the defendant's right to pursue · his attacker. *See Hunter v. State,* 137 Tex.Crim. 289, 128 S.W.2d 1176, 1180 (1939). If raised by the evidence, such a charge must be given. *See Thompson v. State,* 101 Tex.Crim. 587, 276 S.W. 699, 702 (1925) (op. on reh'g). As the court stated in *Thompson:*

> If, in the exercise of a right of self-defense, it becomes necessary that one assailed pursue his adversary, he may lawfully do so as long as, for the protection of his own life, the necessity continues.

*Id.* That propriety, however, is conditioned on the deceased's retreating to a vantage point from which to renew the attack or threatened attack. *See Hunter,* 128 S.W.2d at 1180. To merit such a charge, the defendant's life must still be in danger from attack by the (now) deceased. *See Johnson v. State,* 503 S.W.2d 788, 792 (Tex.Crim.App. 1974).

It is well-settled also that the accused is entitled to a charge on every defensive issue raised by the evidence. *See Liskosski v. State,* 23 Tex.App. 165, 3 S.W. 696, 698 (1887).

> Any theory legitimately arising out of the evidence in a case imposes upon the court the duty of submission by appropriately instructing upon the law governing it; and this, without regard to the strength or weakness of the supporting facts. Uniform with the previous rulings of this court is the doctrine here declared, viz.: The charge of the court must make a pertinent application of the law covering every theory arising out of the evidence; that the duty is not dependent upon the court's judgment of the strength or weakness of the testimony supporting the theory, it being the prerogative of the jury to pass upon the probative force of the testimony.

*Id.* This is true in part because a jury may pick and choose which evidence to believe or give weight to, and which to reject or belittle.

*See Barrera v. State,* 491 S.W.2d 879, 880 (Tex.Crim.App.1973). A defendant is entitled to an instruction on every issue raised by all of the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted. *See Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974).

We have examined the evidence in the case at bar, and we find that the requested instruction was not raised by the evidence. Ray was shot, staggered into the dining room and kitchen area, and collapsed. Taylor did pursue him into the house, but by no stretch of the evidence can it be said that Ray was or appeared to be retreating to renew any perceived or threatened attack. *See Hunter,* 128 S.W.2d at 1180. There is simply no evidence for the jury to believe and upon which the jury could find that Taylor's life was still in danger from attack by Ray. *See Johnson,* 503 S.W.2d at 792. Point of error number four is overruled.

In point of error number five, Taylor complains of the trial judge's failure to include an instruction on the lesser included offense of involuntary manslaughter. Taylor requested such a charge, and it would have allowed the jury to find that Taylor recklessly killed Ray.

The evidence is sufficient to raise an issue of reckless conduct when there is some evidence that the defendant was aware of but consciously disregarded a substantial and unjustifiable risk that the deceased would be killed. *See Lugo v. State,* 667 S.W.2d 144, 147–49 (Tex.Crim.App.1984). In looking for such evidence, we must keep in mind that the jury is authorized to accept or reject any or all testimony of any witness and may look to all the evidence in the case that is offered by the State as well as the defendant in determining the facts and issues. *See Pizano v. State,* 489 S.W.2d 284, 285 (Tex.Crim.App.1973). However, before such a lesser included offense charge should be given, there must be some evidence showing that the defendant, if guilty, is guilty only of that lesser included offense. *See Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App. 1985).

It is with this "guilty only" test that the point of error has difficulty. In this case all of the evidence showed Taylor intentionally shot Ray. The defense presented was that this intentional killing was justified by self-defense or defense of a third person. There is nothing from which the jury could infer that Taylor was merely acting recklessly when he knowingly and intentionally shot Ray. For the issue to have been raised under these facts, we believe that there would have had to have been evidence that the act of discharging the firearm was not intentional. *See Lugo*, 667 S.W.2d at 149; *Salinas v. State*, 644 S.W.2d 744, 746 (Tex.Crim.App. 1983); *Giles v. State*, 617 S.W.2d 690, 691 (Tex.Crim.App. [Panel Op.] 1981). Since the lesser included offense was not raised, there was no error in denying the requested charge. *See Thompson*, 521 S.W.2d at 624. Point of error number five is overruled.

■ In his sixth point of error, Taylor complains that the prosecutor, in opening statements at the punishment phase of the trial, mischaracterized Taylor's plea of "not true" to the enhancement allegations in the indictment. Germane to this point of error, the record reflects the following exchange:

[PROSECUTOR]: Ladies and gentlemen of the jury, at the punishment phase of the trial we get to go into all of the prior felony convictions and misdemeanor convictions that the defendant has been convicted of. The defendant has said that they were not true, that he was not convicted of—

[DEFENSE ATTORNEY]: I would object. That's not what he's saying. I'd ask to be able to explain to the jury what we're saying by pleading not true.

THE COURT: You will have the right to make an opening statement also.

[PROSECUTOR]: The State must prove that he's previously been convicted of those two felony offenses. What I will do, ladies and gentlemen, is call witnesses to the stand in order to do that.

Immediately after the prosecutor concluded her opening statement, Taylor's attorney gave his opening statement and informed the jury that Taylor was simply urging the State to meet their burden by pleading "not true," and nothing more.

■ A prosecutor's opening statement is authorized by TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon Supp.1997). It should inform the jury of the nature of the accusation and the facts which are expected to be proved by the State in support thereof. *See Manning v. State*, 864 S.W.2d 198, 204 (Tex.App.—Waco 1993, pet. ref'd). Here, in context, the remarks by the prosecutor fell within the permissible bounds of opening statements. Moreover, even if the prosecutor's remarks were improper, they were cured by the prosecutor promptly disavowing the complained-of statement's offensive interpretation, i.e. that Taylor was saying he was factually not convicted of the enhancement convictions, and immediately clarifying the comment so that it had an inoffensive meaning. Point of error number six is overruled.

■ In point of error number seven, Taylor complains that in opening argument on punishment the prosecutor stated to the jury that Taylor deserved life in prison because he killed his brother in cold blood. The trial judge sustained Taylor's objection and instructed the jury to disregard the statement. Taylor maintains that the remarks were prejudicial because the jury had found in its verdict of guilty of voluntary manslaughter that the killing was not "cold blooded."

■ Assuming for the sake of argument that the complained-of remarks were improper, the harm from improper arguments will be, in most cases, cured by the trial judge sustaining an objection and instructing to the jury to disregard the remarks. *See Faulkner v. State*, 940 S.W.2d 308, 312 & n. 16 (Tex.App.—Fort Worth 1997, no pet. h.) (op. on reh'g); *Spears v. State*, 801 S.W.2d 571, 579 (Tex.App.—Fort Worth 1990, pet. ref'd); *Richardson v. State*, 766 S.W.2d 538, 543 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Such an instruction cures any harm from an improper jury argument unless the remarks are so inflammatory that their prejudicial effect cannot reasonably be removed by an instruction to disregard. *See Thomas v. State*, 578 S.W.2d 691, 695 (Tex.Crim.App. [Panel Op.] 1979).

To determine whether an improper argument is incurable error, we must review the entire record to ascertain the probable effect of the argument on the minds of the jurors. *See Crowe v. State,* 400 S.W.2d 766, 768 (Tex.Crim.App.1966). We have reviewed the evidence as a whole, and we do not find the remarks were of such a character that the instruction to the jury was insufficient to cure any harm. Point of error number seven is overruled.

In points of error eight and nine, Taylor maintains that there were inadequate predicates for showing identity in the admission of the two judgments and sentences introduced to prove up the enhancement counts. To establish identity in the predicate for both State's exhibits 25 and 26, which were the judgments and sentences in the two prior convictions, a jail fingerprint card, State's exhibit 27, was admitted into evidence. The card had Taylor's fingerprints and the charges, by case number, of the two convictions. Taylor urges that no one gave live testimony that the numbers on the jail cards referenced the identical numbers on the judgments of conviction. Taylor cites no authority for his proposition, and indeed it has been soundly rejected in identical evidentiary scenarios. *See McGowan v. State,* 664 S.W.2d 355, 359 (Tex.Crim.App.1984); *Houser v. State,* 762 S.W.2d 219, 220 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Points of error numbers eight and nine are overruled.

In points of error ten and eleven, Taylor complains of the admission, over objection, of several penitentiary packets. Specifically, Taylor maintains that the penitentiary packets that are State's exhibits 30 and 31 are not under seal, and were only signed by a deputy county clerk instead of the elected county clerk. However, Taylor's first allegation is factually inaccurate, as the original documents that are State's exhibits numbers 30 and 31 *do* contain the required official seals. Although they are attested to by a deputy clerk, the Texas Code of Criminal Procedure specifically authorizes that whenever a duty is imposed upon the clerk of the district or county court, the same may be lawfully performed by his deputy. *See*

TEX.CODE CRIM. PROC. ANN. art. 2.22 (Vernon 1977). We have examined the exhibits and find that the predicate for admission of each was properly laid. *See Reed v. State,* 811 S.W.2d 582, 584–87 (Tex.Crim.App.1991) (op. on reh'g). Points of error ten and eleven are overruled.

The judgment of the trial court is affirmed.