ACCEPTED
03-13-00794-CR
4973121
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/21/2015 2:43:47 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00794-CR

In the
Court of Appeals for the Third District of Texas
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/21/2015 2:43:47 PM
JEFFREY D. KYLE
Clerk

_____

No. 12-0204-K26
In the 26th Judicial District Court
Williamson County, Texas

_____

FRED YAZDI
*Appellant*
v.
THE STATE OF TEXAS
*Appellee*

_____

STATE'S BRIEF IN RESPONSE
_____

Jana Duty
District Attorney
Williamson County, Texas

John C. Prezas
State Bar No: 24041722
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas  78626
(512) 943-1234
(512) 943-1255 (fax)
jprezas@wilco.org

ORAL ARGUMENT REQUESTED

i

# I.   STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 39.1 and 39.7, Appellant has requested oral argument in this case. Therefore, to preserve its right to argue, the State requests oral argument although the State believes that the facts and legal arguments are adequately presented in the briefs and record, and that the decision process would not be significantly aided by oral argument.

# II.   IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), the State wishes to supplement the parties listed in Appellant's brief as follows:

Presiding Judge at Trial

- The Honorable Bert Richardson (presiding by assignment), 368th Judicial District Court, Williamson County, Texas.

Attorneys for the State

- Mr. John C. Prezas, Appellate Counsel, Assistant District Attorney for Williamson County, 405 Martin Luther King, Georgetown, Texas 78626.

- Mr. Daniel Sakaida, Special Prosecutor/Postgraduate Fellow assisting Appellate Counsel for the Williamson County District Attorney, 405 Martin Luther King, Georgetown, Texas 78626.

# III. TABLE OF CONTENTS

I. STATEMENT REGARDING ORAL ARGUMENT ..................................... ii

II. IDENTIFICATION OF THE PARTIES ........................................ ii

III. TABLE OF CONTENTS ................................................... iv

IV. INDEX OF AUTHORITIES ..................................................v

V. STATEMENT OF FACTS ....................................................1

VI. SUMMARY OF THE ARGUMENT .............................................2

VII. ARGUMENT .............................................................3

   A. OUR CURRENT LAW DOES NOT ALLOW FOR A RIGHT TO PURSUE INSTRUCTION ......................................................3

   B. APPELLANT IS NOT ENTITLED TO A FAILURE TO PRESERVE EVIDENCE INSTRUCTION ................................................9

     1. APPELLANT DOES NOT MEET THE CIVIL STANDARD FOR A SPOILATION INSTRUCTION ..............................................9

     2. APPELLANT DOES NOT MEET THE YOUNGBLOOD STANDARD IN CRIMINAL LAW FOR SHOWING A DUE PROCESS VIOLATION ...11

## IV.   INDEX OF AUTHORITIES

### Cases

*Arizona v. Youngblood* 488 U.S. 51 (1988)..................................................... 12, 13

*Brookshire Bros., Ltd. V. Aldridge,* 438 S.W.3d 9 (Tex. 2014) ................... 9, 10, 11

*Castaneda v. State*, 28 S.W.3d 216, 226 (Tex. App.—El Paso 2000, pet. ref'd)......6

*Cisneros v. State*, 747 S.W.2d 946, 949 (Tex. App.—San Antonio 1988, no pet.) ..5

*Cook v. State*, No. 07-98-0296-CR, 1999 Tex. App. LEXIS 3871, at *14-15 (Tex. App.—Amarillo May 21, 1999, pet. ref'd) (mem. op., not designated for publication) ...............................................................................................5

*Fonseca v. State*, No. 04-03-00398-CR 2004 Tex. App. LEXIS 9916 at *9-10, (Tex. App.—San Antonio Nov. 10, 2004, pet dism'd) (mem. op., not designated for publication)...............................................................................................7

*Giesberg v. State*, 984 S.W.2d 245, 250-51 (Tex. Crim. App. 1998) .......................6

*Hunter v. State*, 137 Tex. Crim. 289, 295, 128 S.W.2d 1176, 1180 (1939).............3

*McGowan v. State*, 188 S.W.3d 239, 241-242 (Tex. App.—Waco 2006) ...............7

*Philen v. State*, 683 S.W.2d 440, 445 (Tex. Crim. App. 1984) ...............................4

*See Whipple v. State*, 281 S.W.3d 482, 503-04 (Tex. App.—El Paso 2008) ............6

*Smith v. State*, 411 S.W.2d 548, 553 (Tex. Crim. App. 1967) ..................................3

*Taylor v. State*, 947 S.W.2d 698, 705 (Tex. App.—Fort Worth 1997, no pet.) ........5

*Thompson v. State*, 101 Tex. Crim. 587, 593, 276 S.W. 699, 702-03 (1925) ...........3

*United States v. Silva*, 714 F.3d 1168 (9th Cir. 2013) ..............................................12

*Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007) ..............................7

*Wingate v. State*, No. 14-97-00096-CR, 1999 Tex. App. LEXIS 3768, at *13-14

(Tex. App.—Houston [14th Dist.] May 20, 1999, pet. ref'd) (mem. op., not

designated for publication) ................................................................................7

## Statutes

Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974...................3

Tex. Penal Code §9.31 ..................................................................................................3

TO THE HONORABLE COURT OF APPEALS:

## V.    <u>STATEMENT OF FACTS</u>

Because Appellant's recitation of the facts is missing certain facts the State believes are crucial to a proper analysis of this case, the State offers the following supplement.

As described in Appellant's brief, Appellant's trial counsel cross-examined the State's witnesses vigorously regarding the very failure to collect evidence about which Appellant now complains. Despite the trial court's denial of the requested jury instruction, Appellant's trial counsel spent a significant portion of his closing arguments to the jury addressing his cross-examination on this issue and the implications of the steps Appellant and his counsel(s) believe should have been taken. R.R. vol. 13 p. 47, 56, 60-62.

Further, after cross examination about a failure to collect fingerprints from various surfaces, Detective Jennings testified on re-direct that it was raining the night of the murder, making it impossible to fingerprint various areas since the fingerprinting process uses powders to detect oils from human skin. R.R. vol. 10 p. 230-231. Detective Jennings also testified that swabs were taken of certain stains about which Appellant's attorney asked and those swabs were not positive

1

for blood. R.R. vol. 10 p.  Detective Jenning did concede on cross-examination that there were some places at the scene, such as the wood, doorknob, windows, and under the car, that were dry, could have been examined for fingerprints or fibers and were not. R.R. vol. 10 p. 233-234.  Appellant's trial counsel cross-examined Detective Israel as well about fibers, bodily oils, and blood spatter evidence that was not collected.  R.R. vol. 11 p. 69-71

Yet, for all of this questioning and arguing, nowhere in the record is there any evidence to suggest that police acted in bad faith or deliberately chose not to collect some evidence.  No questions or arguments in the record are directed toward, nor do they reveal, any bad faith or intentional hiding or destruction of any evidence.

## VI.   SUMMARY OF THE ARGUMENT

There is no right to pursue under the penal code and special, non-statutory instructions cannot be included in the court's charge to the jury.  The civil standard for "spoliation" of evidence does not apply here and Appellant does not meet that standard even if it did apply.  The established rule in criminal law is that failing to preserve evidence only results in a denial of due process when the defendant can

show bad faith on the part of law enforcement. There is no evidence of bad faith in this case. Therefore, the trial court was correct to deny both requested instructions.

## VII.   ARGUMENT

## A. OUR CURRENT LAW DOES NOT ALLOW FOR A RIGHT TO PURSUE INSTRUCTION

The two cases Appellant cites for his claim that the jury should have been instructed on a "right to pursue" the victim in this case, *Thompson v. State*, 101 Tex. Crim. 587, 593, 276 S.W. 699, 702-03 (1925); *Hunter v. State*, 137 Tex. Crim. 289, 295, 128 S.W.2d 1176, 1180 (1939), are outdated and inapplicable.

This Court need not delve into the factual analysis required by these cases because neither *Hunter* nor *Thompson* have any current precedential value. Both *Hunter* and *Thompson* were decided under a now-defunct version of the Penal Code, with that old version being entirely replaced in 1974 by the version which is in effect with various amendments to this day. *See* Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974. The new definition of the justification of self-defense may be found in Tex. Penal Code §9.31. One of the last cases to interpret a requested self-defense charge under the old Penal Code was *Smith v. State*, 411 S.W.2d 548, 553 (Tex. Crim. App. 1967).

3

After the new Penal Code took effect, the Court of Criminal Appeals discarded the applicability of *Smith* and similar cases, stating,

> Be that as it may, we need not belabor the facts of this case to determine the applicability of these cases decided under the former Penal Code. We observe that appellant's objection and special requested charge apparently sought to invoke the law of self-defense regarding the right to shoot and continue to shoot as it existed under the 1925 Penal Code. No reference is made to the 1974 Penal Code and its provisions.

*Philen v. State*, 683 S.W.2d 440, 445 (Tex. Crim. App. 1984).[1]

The court in *Philen* upheld the trial court's refusal to enter a further instruction on self-defense, stating that it was sufficient to protect the defendant's right that the jury was instructed, "in effect that regardless of when or where the fatal shots were fired, the appellant should be acquitted if he was acting in self-defense." *Id.* Case law after *Philen* conflated various similar interpretations of self-defense under the old Penal Code, such as the "right to pursue" and the "right to continue shooting," to reach the conclusion that *Philen* stands for the proposition that no error exists where the trial court simply instructs the jury generally on self-defense, without a further instruction on such "rights" under the new Penal Code. *See Cisneros v. State*, 747 S.W.2d 946, 949 (Tex. App.—San Antonio 1988, no

---

[1] Part of the *Philen* opinion rests on the fact that the new penal code, in 1974, required the defendant to retreat if a reasonable person in his position would have done so, which was a "drastic change" from the old standards. However, this reasoning appears distinct and not clearly linked to the adoption of a new standard under the new Penal Code regarding jury instructions.

pet.).  After *Philen*, the lower courts viewed such instructions as repetitious to the general self-defense instruction, and therefore, unnecessary. *Id*.; *see also, as illustrative of this reasoning, Cook v. State*, No. 07-98-0296-CR, 1999 Tex. App. LEXIS 3871, at *14-15 (Tex. App.—Amarillo May 21, 1999, pet. ref'd) (mem. op., not designated for publication) (holding that "an instruction informing the jury that a person who is attacked, or who believes he is under attack, with unlawful deadly force may respond with deadly force 'by any means at his command to the degree that he reasonably believes immediately necessary . . . to protect himself' sufficiently addresses the matters of 'right to continue to pursue' and 'right to continue shooting'").

It is true that the Forth Worth court of appeals reached a different conclusion in 1997 and relied on *Thompson*, *Hunter*, and the prior statute in requiring a "right to pursue" instruction where the evidence provided a basis for such an instruction. *See Taylor v. State*, 947 S.W.2d 698, 705 (Tex. App.—Fort Worth 1997, no pet.). However, there do not appear to be any decisions citing the *Taylor* court for that particular portion of the opinion.  Further, the Court of Criminal Appeals has since held that any defense not recognized by the legislature should not be presented to the jury.

> Furthermore, because the authority to establish what constitutes a defense rests solely with the Legislature, this Court concludes a

5

defense which is not recognized by the Legislature as either a defense or as an affirmative defense does not warrant a separate instruction. *Sanders v. State*, 707 S.W.2d at 80-81. The term defense should not be used for an issue that has not been specifically labeled as such by the Legislature. *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App. 1982); *Willis v. State*, 790 S.W.2d at 315; and *Sanders v. State*.

*Giesberg v. State*, 984 S.W.2d 245, 250-51 (Tex. Crim. App. 1998).

At least one appellate court went on to apply this general rule directly to the

"right to pursue:"

With regard to Castaneda's right to arms, right to shoot to scare, and right to pursue requests, we find the trial court was correct in refusing any separate instructions. In *Giesberg v. State*, the Texas Court of Criminal Appeals held that any defensive theory not recognized or specifically labeled either a defense or an affirmative defense by the legislature does not warrant a separate instruction. The Texas Penal Code recognizes the general defenses of insanity, mistake of fact, mistake of law, intoxication, duress, entrapment, and age affecting criminal responsibility. Chapter Nine outlines justifications absolving a defendant of criminal responsibility, such as public duty, necessity, self-defense, and defense of third persons. Castaneda has not shown, nor do we find, that "right to arms," "right to shoot to scare," and "right to pursue," are defenses recognized by the Texas Penal Code. Accordingly, under *Giesberg*, Castaneda was not entitled to such instructions.

*Castaneda v. State*, 28 S.W.3d 216, 226 (Tex. App.—El Paso 2000, pet. ref'd).

After *Giesberg* several intermediate appellate courts have also applied this logic, and some or all of the above precedent, to a variety of requests for jury instructions in both binding, and merely persuasive, opinions. *See Whipple v. State*, 281 S.W.3d 482, 503-04 (Tex. App.—El Paso 2008) (denying requested

6

instructions for the "right to arm and seek an explanation," "right to possess arms," and "right to continue shooting"); *Wingate v. State*, No. 14-97-00096-CR, 1999 Tex. App. LEXIS 3768, at *13-14 (Tex. App.—Houston [14th Dist.] May 20, 1999, pet. ref'd) (mem. op., not designated for publication) (denial of requested jury instruction on "the right to continue stabbing."); *McGowan v. State*, 188 S.W.3d 239, 241-242 (Tex. App.—Waco 2006) (denial of requested "right to arm" jury instruction); *Fonseca v. State*, No. 04-03-00398-CR 2004 Tex. App. LEXIS 9916 at *9-10, (Tex. App.—San Antonio Nov. 10, 2004, pet dism'd) (mem. op., not designated for publication) (agreeing with *Geisberg* and *Castaneda* regarding "right to arm" jury instruction).

Finally, the Court of Criminal Appeals reaffirmed this line of reasoning in 2007, specifically stating that the "policies reflected in the 1974 Penal Code and in the *Giesberg* line of cases, persuade us that special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007). The Court also made clear that after the 1974 Penal Code was enacted it had revaluated previous precedent and determined that, "instructions on defensive theories not set out in the 1974 Penal Code were inconsistent with the Legislature's

7

intent." *Id* at 209. The court then cited *Giesberg* and several of its previous opinions[2] as support for its conclusion that:

> in a series of more recent cases, we have held that if the defensive theory is not explicitly listed in the penal code--if it merely negates an element in the State's case, rather than independently justifying or excusing the conduct--the trial judge should not instruct the jury on it.

*Id*.

Applying these precedents, and the logic behind them, to the instant case reveals that the requested "right to pursue" is a reformulation of the types of jury instructions rejected by Texas courts after the enactment of the 1974 Penal Code. Thus, the requested instruction is unauthorized because it is simply a forbidden departure from the authorized, existing statutory language regarding self-defense, which was included in the trial court's charge to the jury. It would have been erroneous for the trial court in this case to grant Appellant's request to instruct the jury on a claimed "right to pursue." Therefore, the trial court did not error in denying Appellant's request for such a charge.

---

[2] *Williams v. State,* 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (denying a requested charge on accident); *Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986) (denying a requested charge on good faith); *Barnetet v. State*, 709 S.W.2d 650, 652 (Tex. Crim. App. 1986) (denying a requested charge on alternative cause); *Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001) (denying a requested charge on independent impulse); *Ortiz v. State*, 93 S.W.3d 79, 92 (Tex. Crim. App. 2002) (denying a requested charge on the question of suicide).

**B. APPELLANT IS NOT ENTITLED TO A FAILURE TO PRESERVE**

**EVIDENCE INSTRUCTION**

**1. APPELLANT DOES NOT MEET THE CIVIL STANDARD**

**FOR A SPOILATION INSTRUCTION**

The Supreme Court of Texas has recently reiterated the standard for obtaining a jury instruction regarding spoliation of evidence to which Appellant refers in his brief. *See Brookshire Bros., Ltd. V. Aldridge,* 438 S.W.3d 9 (Tex. 2014) (wrongful spoliation instruction was an abuse of trial court's discretion and cause for reversal). The Supreme Court of Texas did set forth the standard for obtaining a spoliation instruction as follows:

> a spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy. To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so.

*Id* at 14.

The Supreme Court then cautioned as to how extreme a remedy is the spoliation instruction:

> While the spectrum of remedies that may be imposed range from an award of attorney's fees to the dismissal of the lawsuit, the harsh remedy of a spoliation instruction is warranted only when the trial

9

court finds that the spoliating party acted with the specific intent of concealing discoverable evidence, and that a less severe remedy would be insufficient to reduce the prejudice caused by the spoliation. This intent requirement is congruent with the presumption underlying a spoliation instruction—that the evidence would have hurt the wrongdoer. A failure to preserve evidence with a negligent mental state may only underlie a spoliation instruction in the rare situation in which a nonspoliating party has been irreparably deprived of any meaningful ability to present a claim or defense.

*Id.*

Thus, even if it were appropriate to apply this standard, arising from civil law and clearly formulated with civil procedure and civil burdens of proof in mind, the evidence in this case would not warrant such an instruction. The only evidence in the record, from both direct and cross examination of the relevant witnesses, is that the police focused on what they believed to be the most relevant evidence as they understood it. The fact that law enforcement did not collect some evidence the defense wishes they had collected does not, in itself, show any kind of negligence or breach of a duty. Further, as discussed below, precedent from the Supreme Court of the United States' analysis of our criminal law and procedure makes clear the police do not have a duty to collect a particular piece of evidence that Appellant might wish they had collected.

To the extent that the collected evidence would have been inculpatory, Appellant benefits from the lack of collection. To the extent that such evidence

10

would have been mitigating or inconsistent with the State's evidence, or would go to fit a defensive theory, Appellant's attorney achieved those goals by cross-examining the State's witnesses about this issue and by arguing it to the jury. The nature of the closing arguments of Appellant's trial attorney made clear Appellant's desire that the jury draw inferences and conclusions favorable to Appellant from the fact that such evidence was not collected. Even in a civil courtroom, Appellant would not be entitled to the requested instruction.

## 2. APPELLANT DOES NOT MEET THE YOUNGBLOOD STANDARD IN CRIMINAL LAW FOR SHOWING A DUE PROCESS VIOLATION

The *Brookshire* opinion contains a lengthy examination of the history and development of the spoliation law in Texas, not a word of which ever mentions its applicability in the context of a criminal case. *Brookshire Bros., Ltd. V. Aldridge,* 438 S.W.3d 9, 16-19 (Tex. 2014). The State is unaware of any case directly applying the civil spoliation standard in the context of a criminal case. There is a federal case from the 9th Circuit holding that the negligent destruction of evidence after a court order issued to preserve it (as opposed to merely failure to collect or preserve) may warrant a jury instruction. *United States v. Silva*, 714 F.3d 1168 (9th

11

Cir. 2013) (no showing of bad faith necessary for a jury instruction on destruction of evidence). Clearly, that case does not apply to these facts.

The appropriate standard applicable here comes from the *Arizona v. Youngblood* opinion where the Supreme Court of the United States held that unless a criminal defendant can show bad faith on the part of law enforcement, the mere failure to preserve evidence does not rise to the level of a due process of law violation. *Arizona v. Youngblood* 488 U.S. 51 (1988)[3]. The Court in *Youngblood* reached this conclusion by distinguishing the standard for failure to preserve evidence from the standard in failure to disclose evidence under *Brady v. Maryland* where it is not necessary to show bad faith to show a constitutional violation. *Id.* The Court applied this standard to find that where the police collected clothing and rectal swabs the night of the sexual offense but failed to refrigerate the clothing and perform tests for semen samples, the police were, at worst, negligent and thus there was no due process violation. *Id* at 58-59.

The fact that the *Youngblood* court held that bad faith, and not mere negligence, is required to rise to the level of a due process violation cuts directly

---

[3] It is true that after remand, the Arizona Court of Appeals ruled that Arizona case law and Arizona Due Process would have required the officers to preserve the semen samples in question. *State v. Youngblood*, 164 Ariz. 61 (Ct. App. 1989). However, that opinion was later overturned by the Arizona Supreme Court, which correctly applied the bad faith test. *State v. Youngblood*, 173 Ariz. 502 (1993).

12

against inserting into criminal law the spoliation standard from civil law as articulated by the Texas Supreme Court in *Brookshire*, since the latter relies in part on the civil negligence standard. There appears to be no authority for such an insertion, apart from Appellant's desire that this Court do so.

In Youngblood, the Supreme Court of the United States clearly described the issue with Appellant's assertions when it said:

> The Arizona Court of Appeals also referred somewhat obliquely to the State's inability to quantitatively test certain semen samples with the newer P-30 test. If the court meant by this statement that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we strongly disagree. The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests.

*Id* at 58-59 (internal citations omitted).

Here, as in *Youngblood*, the police had no duty to collect the particular pieces of evidence that Appellant might wish they had. Because there is no evidence in the record of bad faith, Appellant's only legally cognizable strategy in this regard was the one his trial counsel gave him, that of cross-examination and argument to the jury about the lack of said evidence in the context of the State's burden of proof. Thus, the court was correct to deny the requested instruction and would have erred had it granted Appellant's request.

13

## PRAYER

Wherefore, the State respectfully requests that this Court affirm the conviction.

Respectfully submitted,

**Jana Duty**
District Attorney
Williamson County, Texas

/s/ John C. Prezas
**John C. Prezas**
State Bar No: 24041722
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas  78626
(512) 943-1234
(512) 943-1255 (fax)
jprezas@wilco.org

## CERTIFICATE OF COMPLIANCE

I certify that, after allowable exclusions, the State's brief contains 3401 words in compliance with Rule 9.4 of the Texas rules of Appellate Procedure.

/s/ John C. Prezas
John C. Prezas

## CERTIFICATE OF SERVICE

I certify that a copy of the State's brief has been e-filed on April 21, 2015, and sent to the attorney for Appellant, Linda Icenhauer-Ramirez at ljir@aol.com, via e-service.

/s/ John C. Prezas
JOHN C. PREZAS

14